TRUSTEES OF THE REX HOSPITAL, a Corporation; FRANK DANIELS, Chairman, T. A. UPCHURCH, EARL JOHNSON, GEORGE L. H. WHITE, and MRS. ROBERT G. YANCEY, the Individual Members Constituting Said Trustees of the REX HOSPITAL, v. BOARD OF COMMISSIONERS OF THE COUNTY OF WAKE; RUSSELL O. HEATER, Chairman, W. W. HOLDING, JOHN P. SWAIN, L. W. UMSTEAD, and CAREY N. ROBERTSON, Individual Members Constituting and Comprising the BOARD OF COMMISSIONERS OF THE COUNTY OF WAKE, NORTH CAROLINA; and the COUNTY OF WAKE; the CITY OF RALEIGH; SALLIE K. QUINCY, a Citizen of the CITY OF RALEIGH, WAKE COUNTY, NORTH CAROLINA, and One of the Sick and Afflicted Poor of the CITY OF RALEIGH, and a Beneficiary of the Trust Set Up by JOHN REX; STELLA K. BARBEE, a Citizen and Taxpayer of the CITY OF RALEIGH and of the COUNTY OF WAKE; RALPH CRUSER, a Citizen and Taxpayer of the COUNTY OF WAKE; and All Other Citizens, Residents and Freeholders of the CITY OF RALEIGH and the COUNTY OF WAKE, NORTH CAROLINA, and Elsewhere, Who Constitute the Public in General, Who Have, or May Claim to Have, an Interest in the Controversial Matters Involved in This Action, Either Generally as Citizens, or Specially as Individual Property Owners, All of Whom Are So Numerous That Their Names, Contentions and Special Interests, If Any, Are Unknown to the Plaintiffs and Cannot by the Exercise of Due Diligence, Be Ascertained; and ARMISTEAD J. MAUPIN, Guardian Ad Litem for the Heirs at Law of JOHN REX, and All Parties Who Have or Might Have Any Right, Title or Interest Whatsoever in the Property Involved in This Controversy, Whether in Esse or Not in Esse, Known or Unknown, as Well as for the Sick and Afflicted Poor of the CITY OF RALEIGH, and the Citizens, Taxpayers and Other Interested Persons of the CITY OF RALEIGH and the COUNTY OF WAKE, NORTH CAROLINA; and Such of Said Unknown Citizens, Residents and Freeholders of the CITY OF RALEIGH or the COUNTY OF WAKE, or Elsewhere, as Are, or May Be, Incapacitated or Under Legal Disability.

(Filed 29 January, 1954.)

1. Trusts § 10: Hospitals § 6½ —

A devise and bequest of property in trust for the erection and equipment of a hospital for the sick and afflicted poor of a city "and for no other use or purpose whatsoever" limits the use of such funds to the purpose stipulated, but, these funds being exhausted for this purpose, the will does not limit the use of other donations and contributions from public, charitable and individual sources, which may be used for the maintenance and operation of the hospital as a public institution open to all citizens of the county, pay patients as well as the sick and afflicted poor.

2. Hospitals § 1: Taxation § 5 —

The expenditure of tax funds for a general county hospital is for a public purpose, and, when authorized by statute, a county has authority, with the approval of its voters, to issue bonds to provide hospital facilities for those able to pay for the services rendered them as well as for the sick and afflicted poor. Constitution of N. C., Art. V, Sec. 3; G.S. 131-28.3; G.S. 131-28.4.

**3. Hospitals § 6½—**

A county which has acquired an existing hospital facility is authorized to lease same to any nonprofit association or corporation for operation on such terms as will carry out the provisions of G.S. 131, Art. 13B.  G.S. 131-126.20 (c).

**4. Trusts § 14b—**

Trustees of a charitable trust may not convey or encumber the trust property in the absence of authority granted them by the trust indenture even to effectuate the purposes of the trust without the approval of a court of competent jurisdiction.

**5. Counties § 14—**

A county may accept deed from the trustees of a charitable hospital upon condition that the property be used for general hospital purposes under the same name, notwithstanding that the instrument conveys a base, qualified or determinable fee.

**6. Appeal and Error § 1—**

Where there is no contention or evidence of breach of a contract between the parties, the Supreme Court will not determine the rights of the parties in the event of a breach.

**7. Hospitals § 6½ : Counties § 18—**

While a county may not contract away its power involving the exercise of judgment and discretion, a provision in a lease by a county of hospital facilities that differences under the contract should be arbitrated does not invalidate the lease when it is further provided that the findings of the arbitrators should not be binding but should be merely recommendatory, since such provision is not an agreement for arbitration in the legal sense, but such clause should be deleted since its purpose can be accomplished as effectively by direct negotiations between the parties or by a committee or committees appointed for such purpose.

**8. Trusts § 14b—**

A court of equity has power to authorize a conveyance of trust property when change in conditions and circumstances make such conveyance necessary to more fully utilize the trust facilities to accomplish the purposes of the trust.

**9. Appeal and Error § 29—**

Exceptions not brought forward, assigned as error and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by all the defendants, except Ralph Cruser, from *Paul, Special Judge,* August Term, 1953, of WAKE.

This is an action instituted on 9 April, 1953, by the plaintiffs for the purposes hereinafter set out.

The complaint filed in the action and the exhibits attached thereto cover 104 pages of the record, which contains 342 pages.

When this matter came on to be heard before his Honor, trial by jury was waived, and it was agreed by counsel for plaintiffs and counsel for all defendants, and Armistead J. Maupin, Esquire, guardian *ad litem,* that the court might hear the evidence, find the facts, and render judgment thereon out of term and out of the county and district.

Prior to the hearing below, the defendants Stella K. Barbee and Sallie K. Quincy, acting through their counsel, moved that the plaintiffs be required to separate the several causes of action, which they contend the plaintiffs attempted to set out in their complaint. The motion was denied at the May Civil Term, 1953, of the Superior Court of Wake County. These defendants entered an exception to the ruling. They then filed a demurrer to the complaint, on the grounds (1) that the complaint does not state a cause or causes of action; (2) that the complaint on its face discloses a misjoinder of parties and causes of action; and (3) that the complaint on its face discloses a misjoinder of parties and causes of action, for that the plaintiffs are seeking to invoke the equity jurisdiction of the court and obtain its approval with respect to several enumerated and unrelated matters. The demurrer was overruled. To this ruling, they also entered an exception.

These same defendants, at the hearing below, moved to strike each and every exhibit attached to the complaint, being A through R, and to strike all reference thereto in the respective paragraphs of the complaint. The motion was denied and they likewise entered an exception thereto.

The findings of fact and conclusions of law, together with the judgment entered thereon, cover thirty-five pages of the record. Since these findings of fact, conclusions of law and the judgment are of record in the office of the Clerk of the Superior Court of Wake County, we shall endeavor to limit our references to the allegations in the pleadings and to state only such facts as we deem necessary to an understanding and proper disposition of the questions presented by the exceptions. A summary of the facts are stated below.

1. That summonses have been served on all defendants mentioned in the title of this cause; that answers have been filed by all the aforesaid defendants, and that all said parties are now properly before the court. That Armistead J. Maupin, who is found to be a suitable and discreet person, has been duly appointed guardian *ad litem* for the heirs at law of John Rex and others, as set forth in the caption of this case, and that said guardian *ad litem* has filed an answer for all the defendants that he was appointed to represent.

2. That the plaintiffs are all *sui juris* and are residents of Wake County, North Carolina, except the plaintiff corporation, trustees of the Rex Hospital, which is a nonprofit corporation, organized for the purpose of conducting, operating and maintaining a hospital in or near the City

of Raleigh, North Carolina, said hospital being known as Rex Hospital, which corporation was chartered by the General Assembly of North Carolina, under Chapter 6, Private Laws of North Carolina, 1840-41, as amended by Chapter 98 of the Public-Local Laws of North Carolina, 1939; that Saint Agnes Hospital in the City of Raleigh, hereinafter referred to, is also a nonprofit corporation, organized for the purpose of conducting, operating and maintaining a hospital in the City of Raleigh.

3. That during the month of February 1839, John Rex, of the County of Wake, died, leaving a last will and testament which was duly probated and recorded in Will Book 24, page 261, in the office of the Clerk of the Superior Court of Wake County, North Carolina. This will devised certain property, in trust, to be "appropriated for the erection thereon of an infirmary or hospital for the sick and afflicted poor of the City of Raleigh and to and for no other use or purpose whatsoever."

4. The General Assembly of North Carolina duly passed an Act authorizing the Commissioners of the City of Raleigh to appoint trustees, capable in law of holding the property devised and bequeathed in the will of John Rex, subject to the approval of the Supreme Court of North Carolina, said Act being found in Private Laws of North Carolina, 1840-41, Chapter 6. Thereafter, the trustees of Rex Hospital, so appointed, after full investigation, finding that the 21-acre tract of land devised to them under said will, was unsuitable for a hospital site or hospital purposes, thereupon petitioned the Court of Equity at the October Term, 1892, of the Superior Court of Wake County, to allow said trustees to sell the original 21-acre tract of land and use the proceeds therefrom in the purchase of other property and the erection of a hospital thereon. In said proceeding, the court, after full consideration of the matter, entered judgment approving the sale of the 21-acre tract of land, which judgment is recorded in Judgment Docket 7, page 171, in the office of the Clerk of the Superior Court of Wake County, North Carolina.

5. The sum of approximately $10,000 was realized from the sale of the 21-acre tract of land, which money, together with private contributions made by various citizens of the City of Raleigh and Wake County, was used in the purchase of a lot or parcel of land located on South Street in the City of Raleigh. The deed thereto was in fee simple without any restrictions whatever, and the trustees of Rex Hospital erected and equipped a hospital building on said property in 1909, and continued the use of these hospital facilities until the erection of the present facilities on Saint Mary's Street in Raleigh.

6. In the year 1933, the Rex Hospital building located on South Street in the City of Raleigh, was old and in a dilapidated condition, unsuitable for the practice of modern surgery, and inadequate to provide for the hospitalization needs of the City of Raleigh and Wake County, whereupon

the trustees of Rex Hospital applied for a loan and grant of $350,000 from the United States of America through its subsidiary The Federal Emergency Administration of Public Works, for the purpose of the construction of a new hospital building and the installation of modern hospital equipment therein, on a new site on Saint Mary's Street in Raleigh. At the March Term, 1934, of the Superior Court of Wake County, the court authorized, empowered and directed the trustees of Rex Hospital to consummate said loan and grant and to execute the necessary notes, bonds, mortgage, or deed of trust, pledging the properties of the corporation as security therefor. An appeal was taken from the judgment in the Superior Court to the Supreme Court and the judgment of the lower court was affirmed in the case of *Raleigh v. Trustees,* 206 N.C. 485, 174 S.E. 278.

7. In 1935, the Board of Commissioners of Wake County, hereinafter called "Commissioners" unless otherwise designated, pursuant to the authority contained in Chapter 65, Public Laws of North Carolina, 1935, the same being G.S. 153-152, and pursuant to resolution duly and regularly adopted by said Commissioners, entered into a contract or agreement with the trustees of Rex Hospital, under the terms of which agreement the trustees of Rex Hospital agreed to furnish proper hospital facilities for the indigent sick and afflicted poor of Wake County for a period of thirty years, beginning on the 1st day of July, 1935, and Wake County in consideration of services rendered, agreed to pay the trustees of Rex Hospital the sum of $10,000 annually for a period of thirty years, the first payment to be made on the 1st day of July, 1935. In an action entitled *Martin v. Board of Commissioners of Wake County,* the court, after full consideration of the matter, entered judgment at the April Term, 1935, of the Superior Court of Wake County, upholding the validity of the contract as aforesaid, and upon appeal to the Supreme Court the judgment of the court below was affirmed and the opinion reported in 208 N.C. 354, 180 S.E. 777.

8. A similar arrangement for the annual payment of $10,000 by the City of Raleigh for a period of thirty years, pursuant to the provisions of Chapter 64, Public Laws of North Carolina, 1935, the same being G.S. 160-229, was approved by the Superior Court in an action entitled *Martin v. City of Raleigh,* and upon appeal therefrom to the Supreme Court the judgment of the lower court was affirmed and the opinion reported in 208 N.C. 369, 180 S.E. 786.

9. The trustees of Rex Hospital thereupon proceeded with the plans for the consummation of said loan and grant from the Federal Emergency Administration of Public Works. From the proceeds of the loan and grant and from voluntary contributions made by private citizens of the City of Raleigh and Wake County, the trustees of Rex Hospital erected and equipped a modern hospital building on land acquired by the corpora-

tion on Saint Mary's Street in Raleigh, at a total cost of $485,000. The new hospital building was opened for use in May, 1937. In order to secure the indebtedness due the Federal Emergency Administration of Public Works, in the principal amount of $287,000, evidenced by "4% First Mortgage Bonds," the trustees of Rex Hospital executed and delivered a deed of trust of date July 1, 1935, to the Raleigh Branch of the Security National Bank of Greensboro, trustee, to cover the old hospital building, properties and equipment situate on South Street, the new hospital building, properties and equipment situate on Saint Mary's Street, and pledged the revenue received annually from Wake County and the City of Raleigh for hospitalization of the sick and afflicted poor, according to the terms of the contracts hereinabove described in paragraphs seven and eight, for the payment of said indebtedness.

10. Thereafter, the trustees of Rex Hospital found it necessary for the continued efficient operation of the hospital to erect a nurses' home at the new location, and in order to finance the erection of said home, obtained the approval of a loan from the Reconstruction Finance Corporation in the sum of $90,000. Arrangements were made to sell and convey to Wake County the properties situate on South Street, which were no longer necessary or needed for hospital purposes, for the sum of $40,000. In an *ex parte* proceeding entitled *In the matter of Trustees of The Rex Hospital, a corporation,* judgment was entered at the Second May Civil Term, 1939, of the Wake County Superior Court approving the consummation of said loan from the Reconstruction Finance Corporation in the sum of $90,000, the sale of the South Street property to Wake County for the sum of $40,000, and the erection of said nurses' home on the Saint Mary's Street property, which judgment is duly recorded in Judgment Docket 47, page 119, in the office of the Clerk of the Superior Court of Wake County. In order to secure said indebtedness to the Reconstruction Finance Corporation, the trustees of Rex Hospital executed and delivered a second deed of trust of date July 1, 1939, covering the hospital building, properties, equipment, and the nurses' home situate on Saint Mary's Street, and pledged the revenue received from pay patients at Rex Hospital, together with the sum received annually from Wake County and the City of Raleigh for hospitalization of the sick and afflicted poor, according to the terms of the contracts hereinabove set forth, for the payment of said indebtedness. Pursuant to the authority of the judgment hereinabove referred to, the trustees of Rex Hospital proceeded to construct a nurses' home on Saint Mary's Street, at a cost of approximately $130,000.

11. In the year 1944, the hospital facilities at Rex Hospital had again become inadequate and it was necessary and desirable to erect and equip additional hospital facilities, provide more beds for pay patients and for

the sick and afflicted poor of the City of Raleigh and Wake County, the trustees of Rex Hospital having exhausted their ability to borrow or otherwise raise additional capital for the expansion of said hospital facilities by the erection of an addition thereto and to provide the necessary equipment for the same, a grant was obtained from the Duke Foundation for the expansion of said hospital facilities by the erection to the then existing hospital building of an addition to provide for approximately fifty additional beds for patients and other necessary hospital facilities; on condition that the trustees of Rex Hospital show that the hospital properties were not mortgaged or otherwise encumbered. It therefore became necessary to procure the cancellation of the lien to the Federal Emergency Administration of Public Works and the Reconstruction Finance Corporation. This was accomplished by obtaining a loan of $290,000 on the 1st day of March, 1945, from the Durham Life Insurance Company, payable in monthly installments in the sum of $1,166.66 until paid in full, and secured by an assignment of even date therewith under the terms of which the trustees of Rex Hospital assigned and transferred and set over unto the Durham Life Insurance Company all rights to the annual payments now due and thereafter becoming due under those two certain contracts of date 1 July, 1935, entered into by and between Wake County and the City of Raleigh, respectively, hereinabove referred to; and the trustees of Rex Hospital covenanted not to sell, convey or mortgage any of the real properties of the trustees of Rex Hospital prior to the payment of said note, or bond. Upon the consummation of this transaction, the mortgages or deeds of trust referred to hereinabove were duly canceled of record. From the proceeds of the grant from the Duke Foundation, and from other funds, the trustees of Rex Hospital proceeded to complete the erection of an addition to the hospital and provide equipment therefor, which provided beds for approximately fifty patients, at a cost of approximately $251,679.51.

12. In the year 1952, the trustees of Rex Hospital, from the proceeds of a grant from the North Carolina Medical Care Commission, and from funds made available through the Hill-Burton Act, erected upon the Saint Mary's Street premises a power plant and a laundry and other improvements, at a cost of approximately $278,577.79, for use in connection with the operation of the hospital.

13. The land owned in fee simple by the plaintiff corporation at the present site of Rex Hospital without any restrictions whatever upon the power of alienation or encumbering said property other than the covenant on the part of the trustees of Rex Hospital not to sell, convey, or transfer the same unless and until the indebtedness to the Durham Life Insurance Company, referred to in paragraph eleven above, has been paid in full, consists of 15.5 acres, and the land, buildings, and equipment thereon,

known as Rex Hospital, cost in excess of $1,144,000, although the replacement cost would be greatly in excess of such amount. Of this investment, the sum of only $10,000 was derived from the estate of John Rex. The expense, maintenance, and upkeep of Rex Hospital has been paid largely through the patronage of pay patients, with the exception of private contributions, grants, and income derived from the contracts entered into with Wake County and the City of Raleigh, respectively, as described hereinabove.

14. The court below found as a fact that the demand for beds and space in Rex Hospital for the treatment of the sick and afflicted poor of the City of Raleigh and Wake County, and for pay patients, has increased to the point that the present hospital facilities are entirely inadequate to meet the demands made upon it; that at the present time there is dire need for an expansion of said hospital facilities by the construction of an addition thereto to provide for approximately 150 additional patients, together with the necessary hospital facilities and services incident thereto. That the trustees of Rex Hospital have made diligent efforts to obtain the necessary funds from private sources, and otherwise, for the necessary expansion and improvements to said hospital, and it is impossible for the trustees of Rex Hospital to obtain a loan from a private lending agency in an amount sufficient to provide the necessary expansion and improvements to the hospital; that at the present time there are no funds available in the trust created under the will of John Rex for the expansion of said hospital facilities, or to provide necessary hospital services; and the income of the trustees of Rex Hospital from pay patients, contributions from Wake County and the City of Raleigh, pursuant to the contracts referred to herein, from the Duke Foundation, and other sources, is barely adequate to meet the current operating expenses without providing for the expansion of the hospital facilities.

15. At the time of the death of John Rex in 1839, the City of Raleigh had an estimated population of 2,244 and the County of Wake had an estimated population of 21,818. In the year 1940 Raleigh had a population of 46,897, and Wake County 109,544. In 1950, Raleigh had a population of 65,679, and Wake County 136,450, according to the Federal Census for said years; and that as the population of the City of Raleigh and Wake County has increased and the demand for medical attention has increased due to the improvement in medical science and treatment for patients, the facilities of Rex Hospital have become correspondingly more and more crowded, and the cost of operation has followed the national economic trend and increased tremendously over former cost of operation, to the end that it has become impossible for the trustees of Rex Hospital, with the present hospital facilities, to meet the increasing needs and demands for the treatment of patients in said hospital; that

this increase in patients has necessarily resulted in an increased demand upon Rex Hospital and the use of its facilities. The increase in the various services performed in Rex Hospital between the year 1930 and the year 1952, is shown by the following table:

|  | 1930 | 1940 | 1945 | 1950 | 1952 |
|---|---|---|---|---|---|
| Number of beds.. ........ ............ | 110 | 177 | 247 | 307 | 307 |
| Number of bassinets ....... ........ | 16 | 26 | 26 | 58 | 58 |
| In-patients treated ... .. ............ | 2,980 | 5,394 | 9,616 | 13,485 | 14,276 |
| Number of Hospital Care......| 27,567 | 50,136 | 89,212 | 108,291 | 108,752 |
| Out-patients treated.. ............ | 2,087 | 3,704 | 4,413 | 9,611 | 12,106 |
| Out-patients visits .................. | 8,194 | 7,002 | 7,781 | 16,840 | 19,283 |
| Live births.. ........ ................... | 231 | 520 | 1,018 | 1,732 | 1,890 |
| Major operations .................... | 638 | 1,149 | 1,689 | 1,943 | 1,892 |
| Minor operations ....... ............ | 1,030 | 1,517 | 2,418 | 2,915 | 2,973 |
| Laboratory tests .. .................. | 7,479 | 27,624 | 47,303 | 122,408 | 129,704 |
| X-ray use (patients) ............ | 385 | 1,408 | 2,981 | 7,592 | 7,948 |

Frequently during recent years, the daily census of the hospital shows in excess of 360 patients, with a normal bed capacity for 307 patients, or more than twenty per cent above normal capacity, and in 1952 for the entire year, the hospital had an occupancy rate of eighty-eight per cent of capacity. The hospital facilities at Saint Agnes Hospital for the treatment of Negro patients are even more inadequate and overtaxed than are the facilities at Rex Hospital. In the event of an epidemic or disaster in the City of Raleigh or Wake County, there would not be sufficient beds in the hospitals for treating acute medical conditions in Wake County, which would aggravate to a high degree any such epidemic or disaster.

16. In order to remedy the need for adequate hospital facilities in Wake County, the trustees of Rex Hospital presented the situation to the Commissioners in the year 1950; and as a result of said presentation and after extensive public hearings the said Commissioners introduced a bond ordinance in August, 1951, to provide for a bond issue in the sum of $2,800,000 to provide needed hospital facilities in Wake County including the expansion and improvement of the facilities of Rex Hospital and of Saint Agnes Hospital. In addition thereto the trustees of Rex Hospital and the trustees of Saint Agnes Hospital obtained a commitment from the North Carolina Medical Care Commission in May, 1951, for a gift or grant to aid in the above expansion program to the extent of up to but not exceeding forty-four per cent of the cost thereof. (It appears from the testimony of Dr. John A. Ferrell, Executive Secretary of the North Carolina Medical Care Commission, that the commitment by this Com-

mission has not been rescinded. It is still considered an eligible project subject to the availability of necessary funds.) Following the introduction of the bond order hereinabove referred to, a resolution was adopted by the Local Government Commission on 13 September, 1951, finding among other things that seriously overcrowded conditions at Rex and Saint Agnes Hospitals in the City of Raleigh were a matter of general information, and need for the planned expansion of the facilities for those hospitals appear to be clearly obvious, and that the amount of the proceeds of said proposed bonds to be expended at Rex and Saint Agnes Hospitals is not excessive, but declining to approve the bond issue on the ground that the title to Rex and Saint Agnes Hospitals was not in Wake County.

17. Thereafter, on 23 June, 1952, the trustees of Rex Hospital proposed to the Commissioners that in order to provide assurance that Rex Hospital will continue to operate as a public hospital and to furnish hospitalization to the people of Wake County and provide for the care and maintenance of the indigent sick and afflicted poor of Wake County and the City of Raleigh, in consideration of the approval of an issue of bonds by Wake County for the expansion of existing hospital facilities, the trustees of Rex Hospital will convey title to all properties of the hospital to Wake County by good and sufficient deed on the following terms and conditions:

"1. That said property shall be used by Wake County solely for hospital purposes, and shall provide care and maintenance for the sick and afflicted poor of the City of Raleigh and Wake County.

"2. That any hospital on said property shall be known as Rex Hospital.

"In the event that said property should cease for a period of six months either to

"(a) be used by Wake County for hospital purposes to provide medical care for the indigent sick and afflicted poor of the City of Raleigh and Wake County or

"(b) bear the name of Rex Hospital,

"the conveyance of said property to Wake County by Trustees of the Rex Hospital shall be void, and title to the property so conveyed to Wake County shall revert to Trustees of the Rex Hospital, its successors and assigns."

Such conveyance to be subject to a deed of trust on said properties securing the balance of the Hospital's indebtedness to the Durham Life Insurance Company.

17. The Commissioners acting upon this proposal introduced and finally adopted on 1 December, 1952, a bond order authorizing the issuance of $3,060,000 hospital bonds of the County of Wake for the purpose of erecting, enlarging, improving and equipping public hospitals of said

county, including the acquisition of necessary land; the hospitals so to be erected, enlarged, improved and equipped as follows:

"(a) The existing hospitals known as Rex Hospital and Saint Agnes Hospital, in the City of Raleigh.

"(b) A new hospital to be erected in or in the vicinity of the Town of Fuquay Springs.

"(c) A new hospital to be erected in or in the vicinity of the Town of Wake Forest.

"(d) A new hospital to be erected in the Town of Zebulon or in the Town of Wendell, or in the vicinity of said two towns.

"(e) A new hospital to be erected in the Town of Apex or in the Town of Cary, or in the vicinity of said two towns.

"Not more than $2,110,000 of the proceeds of the sale of the bonds hereby authorized shall be expended for Rex Hospital and Saint Agnes Hospital; and not more than $950,000 of the proceeds of the sale of said bonds shall be expended for said new hospitals. No bonds shall be issued under this bond order unless and until the lands and buildings of Rex Hospital and Saint Agnes Hospital shall have been conveyed to the County of Wake for county Hospital purposes."

The usual provisions for the levy of taxes sufficient to pay the principal of and the interest on said bonds when due are contained in the order. The order further provides that it was not to be effective until approved by the voters of Wake County at an election as provided in The County Finance Act. The issuance of said bonds, subject to the conditions set out in the order, was duly approved by the Local Government Commission on 29 October, 1952.

19. In addition to conveying the properties referred to above to Wake County, it is contemplated that the facilities shall be leased to the trustees of Rex Hospital for actual operation under the terms and conditions set out in the proposed lease, copy of which appears in the record. It is also contemplated that these instruments will be executed and deposited in escrow to be delivered to the proper parties if and when the necessary funds as contemplated under the proposed plan become available, and a contract or contracts are let for the proposed expansion and improvement of the hospital. The title to the property of Saint Agnes Hospital is to be conveyed to Wake County on the same terms and conditions and a lease agreement is to be executed, providing for the operation of the hospital by the trustees of Saint Agnes Hospital under similar terms and conditions as that outlined with respect to Rex Hospital.

Upon the facts found by the court below, pertinent parts of which are hereinbefore set out, and the conclusions of law drawn therefrom, all of which are set out in the judgment the court entered a decree as follows:

"A. The Trustees of the Rex Hospital be, and they are hereby authorized and empowered, in its discretion, prior to the execution and delivery of the Escrow Agreement, deed and operational lease herein referred to, to execute and deliver unto Durham Life Insurance Company a note secured by a first deed of trust on the properties described in Paragraph 27 of the Complaint, to evidence and secure the amount of the indebtedness then due and owing Durham Life Insurance Company by reason of the bond, assignment and agreement attached to the complaint marked Exhibit F and Exhibit G.

"B. That the properties described in Paragraph 27 of the Complaint are owned by Trustees of the Rex Hospital in fee simple without any restrictions whatsoever, upon the power of alienation or of encumbering said property, and that Trustees of the Rex Hospital have the power to convey the same, subject to the approval of the Court in its equitable jurisdiction, in the manner set forth in the proposed deed (Exhibit P).

"C. That the trust created under the will of John Rex be, and the same is hereby modified, revised and amended in so far as it may be necessary to do so to carry out and effectuate the plan for the expansion and improvement of the Rex Hospital facilities in the manner herein set forth; and Trustees of the Rex Hospital be, and they are hereby authorized and empowered, in its discretion, to do and perform all acts as may be necessary to effectuate said plan for the expansion and improvement of the Rex Hospital facilities in the manner set forth herein.

"D. That Trustees of the Rex Hospital be, and they are hereby authorized and empowered, in its discretion, to execute and deliver unto the Raleigh Branch of the Security National Bank of Greensboro, as Trustee, the Escrow Agreement (Exhibit R), to execute and deliver the proposed deed to Wake County (Exhibit P), and to enter into with Wake County the proposed operational lease (Exhibit Q), or other suitable operational lease, upon fulfillment of the terms and conditions contained in said escrow agreement.

"E. That the Trustees of the Rex Hospital be, and they are hereby authorized and empowered, in its discretion, to proceed with the expansion and improvement of the hospital facilities at Rex Hospital to provide for the erection and equipping of an addition thereto, according to the plan herein set forth.

"F. That nothing contained in said plan for the expansion and improvement of the Rex Hospital facilities affects the validity of the agreements of date July 1, 1935, entered into by and between Trustees of the Rex Hospital and Wake County and the City of Raleigh, respectively, referred to in Paragraphs 9 and 10 hereof, and the obligations of Wake County and the City of Raleigh, respectively, to pay unto Trustees of the Rex Hospital the sum of $10,000.00 annually for the care and treatment

of the indigent sick and afflicted poor of Wake County and the City of Raleigh, respectively, for the full term thereof, so long as Trustees of Rex Hospital operate the hospital facilities known as Rex Hospital and comply with the terms and conditions of said agreements, and said agreements remain in full force and effect.

"G. That the proposed deed from Trustees of Rex Hospital to Wake County (Exhibit P) to be deposited with the proposed Escrow Agreement (Exhibit R) would convey to the County of Wake a fee simple title to the property described therein, subject only to the conditions set forth in said deed, and the County of Wake is hereby fully authorized and empowered to accept said deed under the terms and conditions set forth therein, freed of the trust created under the will of John Rex.

"H. That the Board of Commissioners of Wake County is fully authorized and empowered, in its discretion, to call a bond election for the purpose of issuing bonds proposed in the bond order (Exhibit O), and to expend the proceeds therefrom, in the event of approval of the same by the voters of Wake County at a referendum called for that purpose, for hospital purposes in the manner set forth in said bond order, including the expansion and improvement of the facilities of Rex and Saint Agnes Hospitals, and if said bond election is approved by the voters of Wake County, said Board of County Commissioners is fully authorized and empowered to supervise the expenditure of the net proceeds from the sale of any bonds voted in such bond election, either as a Board or under the terms of G.S. 131-126.21; and that the said Board of County Commissioners is further fully authorized and empowered, under the terms of G.S. 131-126.20 (c) and 131-126.26 to enter into the proposed operational lease with Trustees of the Rex Hospital (Exhibit Q), or such other operational lease for the operation of Rex and Saint Agnes Hospitals, with the respective Trustees thereof, upon such terms and for such period or periods as said Board of County Commissioners may deem advisable.

"I. The Board of County Commissioners for Wake County, Trustees of the Rex Hospital, and any other parties to this action, are fully authorized and empowered to carry out the plan set forth herein for the conveyance of the Rex Hospital property and of the Saint Agnes Hospital property under the terms and conditions of said plan, and said parties are hereby fully authorized and empowered in doing so to take such steps as may be necessary to carry out the terms of said plan so long as the same are not inconsistent with the terms of this Judgment.

"J. The approval of the Court is specifically given to the acceptance by the Board of County Commissioners of Wake County of said proposed deed from Trustees of the Rex Hospital (Exhibit P), to the acceptance of a similar deed from Trustees of Saint Agnes Hospital property, to entering into the proposed operational lease with Trustees of the Rex

Hospital (Exhibit Q), and a similar operational lease with Saint Agnes Hospital, or other operational leases for Rex and Saint Agnes Hospitals, with the respective Trustees thereof, upon such terms and for such period or periods as said Board of County Commissioners may deem advisable; and to enter into a proposed Escrow Agreement with Trustees of the Rex Hospital (Exhibit R) and a similar Escrow Agreement with Trustees of Saint Agnes Hospital.

"K. That the costs of this action are hereby taxed against the Trustees of the Rex Hospital."

All of the defendants, except Ralph Cruser, excepted to the judgment and appealed, assigning errors.

*Arch T. Allen and Edward B. Hipp for appellees, Trustees of Rex Hospital.*

*Paul F. Smith for appellant, City of Raleigh.*

*Thomas A. Banks for appellants, Board of Commissioners of Wake County, with William Henry Hoyt, of Counsel, and Armistead J. Maupin, guardian ad litem.*

*Vaughan S. Winborne and Samuel Pretlow Winborne, for appellants, Stella K. Barbee and Sallie K. Quincy.*

DENNY, J.    The primary purpose of this litigation is to determine whether the trustees of the Rex Hospital, a corporation, acting through its trustees, and Wake County, acting through its Board of County Commissioners, have the legal right to execute the proposed deed, lease, and escrow agreement, referred to hereinabove, for the purposes indicated.

The appellants contend, particularly Wake County and the guardian *ad litem* for the heirs at law of John Rex, *et al.,* that there is nothing in the record to support the view that the hospital plant and the facilities now owned and operated by the trustees of Rex Hospital would need any expansion or improvement if the hospital were operated solely for the care and treatment of the sick and afflicted poor of the City of Raleigh, and that there is nothing in the record to indicate that the present income and assets of the corporation are not sufficient to enable the trustees to operate the hospital for that limited purpose.    They contend further that only in the event the income and assets of the hospital are insufficient to provide for the care and treatment of the sick and afflicted poor of the City of Raleigh, is it permissible under the law to modify the trust.    Furthermore, even in that event, the modification, it is contended, should be only to the extent necessary to permit the trustees to take care of as many of the sick and afflicted poor of the City of Raleigh as can be cared for by means of the income and assets of the trust and should not be modified so as to permit the consummation of the proposed plan.

These contentions are based on certain provisions contained in the will of John Rex and Chapter 6 of the Private Laws of North Carolina, 1840-41, which are as follows:

1. "It being my desire to provide a comfortable retreat for the sick and afflicted poor belonging to the city of Raleigh, in which they may have the benefit of skillful medical aid and proper attention, it is my will that a lot or parcel of land containing twenty-one acres adjoining the city of Raleigh on the southwest side, being the same purchased by me of the commissioners appointed for selling a part of the public lands, and which is comprised in the general devise of all my lands to the aforesaid Duncan Cameron and Geo. W. Mordecai in trust as before mentioned, be appropriated for the erection thereon of an infirmary or hospital for the sick and afflicted poor of the city of Raleigh and for no other use or purpose whatsoever.

"And for the endowment of said hospital as far as I have the ability to do so, it is my will that all the money belonging to me, all the debts due me, and all the rest and residue of my estate hereinbefore given, devised and bequeathed by me to the said Duncan Cameron and Geo. W. Mordecai in trust and not otherwise specially appropriated be, and they are hereby appropriated to the endowment of said hospital, and whenever the constituted authorities of the city of Raleigh shall legally appoint trustees capable in law of holding the same, then the said Duncan Cameron and Geo. W. Mordecai or the survivor of them or the executor or executors of the survivor of them, shall convey the said lot or parcel of land and the funds accruing from the money belonging to me, the debts due and the rest and residue of my estate as above described to the said trustees, or their successors duly appointed in trust forever, for the execution and endowment of such hospital and no other use or purpose whatsoever."

2. The above Act prescribes the method for the appointment of five trustees to take and hold the assets devised under the will of John Rex. Such trustees, according to the Act, must be approved by the Supreme Court, now changed by the amendment hereinabove referred to, to the Superior Court. The Act further provides that when the trustees were nominated and affirmed, they would be "a body corporate and politic by the name of the 'Trustees of the Rex Hospital,' and shall be able and capable in law to receive and hold the property and effects, devised and bequeathed by the said John Rex in and by his said will and to use and apply the same to and for the purposes (and none other) specified in said will, and also to receive donations of lands or personal estate either by deed or will for the purposes aforesaid (and none other) and to have succession, to sue and be sued, and to have the other powers incident to corporation in regard to the charity created by the said will and for no other purposes."

The appellants place great stress upon the provisions of the devise and the statute enacted in connection therewith, which require that the property devised and donations received shall be used for the construction of an infirmary or hospital for the sick and afflicted poor of the City of Raleigh, and for the endowment of the hospital, and *for no other purpose.* (Emphasis added.) They take the position that when these provisions are rightly construed the trustees of Rex Hospital are not authorized to expend any funds received by them to provide hospital facilities in excess of those required for the care of the sick and afflicted poor of the City of Raleigh. We do not concur in this view. In our opinion it was the intention of John Rex to limit the use of the funds to be derived from his estate, but not to limit the use of the hospital facilities to be provided so as to prevent their use as a general public hospital. In expressing his desire to provide a comfortable retreat for the sick and afflicted poor of the City of Raleigh in which they might have the benefit of skillful medical aid and proper attention, he did not limit the use of the proposed infirmary or hospital to the sick and afflicted poor of Raleigh and for no other purpose. He devised his property for the purpose of providing such infirmary or hospital for the sick and afflicted poor of the City of Raleigh and to endow the institution in so far as he could do so, and directed that the funds derived from his estate were to be used for the accomplishment of the above objectives, and for no other purpose.

If the contentions of the appellants were correct and should be upheld, it would be necessary to conclude that the facilities of Rex Hospital are already far in excess of the needs of the indigent sick and afflicted poor of the City of Raleigh even though it appears from Plaintiffs' Exhibit 19, that during the last five years the cost of caring for charity patients has averaged $158,775.32 annually. Furthermore, for the trustees of Rex Hospital and the courts to have construed the trust in the manner now contended, it would have been impractical if not impossible from an economic standpoint to have provided the facilities and the staff necessary to render competent medical services even to the sick and afflicted poor of the City of Raleigh.

These appellants seem to have overlooked the provisions contained in paragraph three of the above Act, as well as the former decisions of this Court involving the John Rex trust.

Section 3 of the above Act reads as follows: "And be it further enacted: That the commissioners of the city of Raleigh, . . . may, . . . by petition in equity in the Supreme Court (now the Superior Court), call on the said trustees for an exhibition of their accounts and doings in discharge of this trust, and such proceedings shall be summary, and the Court may make any order or orders thereupon from time to time as may be necessary to enforce a strict compliance with the design of the testator,

. . . and generally to do and order what shall seem to the said Court best in the premises."

In the case of *Raleigh v. Trustees,* 206 N.C. 485, 174 S.E. 278, being an action to restrain the trustees of Rex Hospital from obtaining a grant and loan from the Federal Emergency Administration of Public Works, referred to hereinabove, the Superior Court, among other things, found as a fact that unless the facilities of the hospital were improved the institution would cease to function and the entire property belonging to said corporation would escheat to the University of North Carolina as provided by law; that not only would the small fund of $10,000, donated by John Rex, be forfeited, but also the sum of $212,000 contributed by the public generally and the City of Raleigh, would be lost in so far as the beneficiaries named in the will of John Rex were concerned. The court likewise found that Rex Hospital is a public body corporate, in contemplation of the law and also within the purview of the ruling of the Federal Emergency Administration of Public Works. Upon the facts found, the court concluded, as a matter of law, that the trustees of the Rex Hospital, a corporation, "is a public charitable institution rather than a strictly charitable trust," and approved the request for the loan and grant. This Court on appeal affirmed the judgment of the court below.

In the case of *Martin v. Commissioners of Wake County,* 208 N.C. 354, 180 S.E. 777, this Court said: "The Trustees of Rex Hospital, as a corporation, created by the General Assembly of North Carolina, own and maintain a hospital in the City of Raleigh, Wake County, North Carolina, for the medical treatment and hospital care of the indigent sick and afflicted poor of the City of Raleigh and of Wake County. This hospital is supported by donations of property and money by individuals and by the City of Raleigh and Wake County, and also by sums paid by patients who are able to pay for services rendered to them. It is a public hospital, and is maintained, primarily, as a charitable institution." The Court, thereupon, in the above case and in *Martin v. Raleigh,* 208 N.C. 369, 180 S.E. 786, approved the execution of the contracts referred to in paragraphs seven and eight of the statement of facts herein, pursuant to the provisions of G.S. 153-152 and G.S. 160-229, and upon a finding that the respective annual payments required by said contracts would amount to less than fifty per cent of the actual cost of caring for the sick and afflicted poor in Wake County and the City of Raleigh according to the actual annual cost for such services during the previous three years.

It is well to note that Rex Hospital has no endowment as contemplated by the will of John Rex, but is supported by donations by individuals, the Duke Endowment, the North Carolina Medical Care Commission, and by the City of Raleigh and Wake County, and also by sums paid by patients who are able to pay for the services rendered to them. *Martin v. Com-*

*missioners of Wake, supra.* It follows, therefore, that all the assets of the corporation are invested in land, buildings, and hospital facilities.

The expenditure of tax funds for the construction of a general county hospital is for a public purpose; and a county, when authorized by the General Assembly and with the approval of a majority of the voters voting in an election held as provided by law, has as much right to issue its bonds to provide hospital facilities for those citizens who are able to pay for the services rendered to them as it does to provide such facilities for the sick and afflicted poor. Article V, Section 3 of the Constitution; G.S. 131-28.3 and 131-28.4; *Hospital v. Commissioners of Durham,* 231 N.C. 604, 58 S.E. 2d 696; *Burleson v. Board of Aldermen,* 200 N.C. 30, 156 S.E. 241; *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634. Moreover, when a county acquires an existing hospital facility by purchase, gift, or otherwise, it is expressly authorized by G.S. 131-126.20 (c) to lease such facility to any nonprofit association or corporation for operation on such terms as will carry out the provisions of Article 13B of Chapter 131 of the General Statutes, *Hospital v. Commissioners of Durham, supra.* We hold, therefore, that any lease executed by Wake County for the operation of Saint Agnes and Rex Hospitals must be on such terms as will carry out the provisions of the above Article.

The appellants except to and assign as error the finding of fact to the effect that the trustees of Rex Hospital, a corporation, owns land which its trustees propose to convey to Wake County, in fee simple without any restriction whatever upon the power of alienation or encumbering said property other than the covenant on the part of the trustees not to sell or convey the premises or any part thereof until the debt due the Durham Life Insurance Company has been paid in full.

The above finding is tantamount to a conclusion of law and will be modified to this extent. The property in question is held by the corporation in fee simple and may be conveyed or encumbered with the approval of a court of competent jurisdiction. *Raleigh v. Trustees, supra; Shannonhouse v. Wolfe,* 191 N.C. 769, 133 S.E. 93. *Cf. Hall v. Quinn,* 190 N.C. 326, 130 S.E. 18.

The appellants also assign as error the conclusion of law to the effect that Wake County has the power to accept the proposed deed from the trustees of Rex Hospital free of the trust created under the will of John Rex.

It is said in *Hospital v. Commissioners of Durham, supra:* "The deeds from the Trustees of Watts Hospital and the heirs and residuary devisees of George W. Watts and Annie Louise Hill convey to Durham County a base, qualified, or determinable fee. *Paul v. Willoughby,* 204 N.C. 595, 169 S.E. 226; *Henderson v. Power Co.,* 200 N.C. 443, 157 S.E. 425, 80 A.L.R. 497; *West v. Murphy,* 197 N.C. 488, 149 S.E. 731. Notwithstand-

ing this fact, the court rightly authorized Durham County to accept these deeds. For all practical purposes, they vest in Durham County title to the Watts Hospital property in fee simple absolute; for the estate which they convey will endure forever unless Durham County voluntarily ceases to use the property for hospital purposes or voluntarily changes the name of the hospital standing thereon. Indeed, the statute does not make the acquisition of title by the county a condition precedent to the extension of aid. G.S. 131-126.26."

We likewise hold that Wake County has the power to accept the proposed deed on the terms and conditions set out therein. However, the property will revert to the trustees of Rex Hospital if it ceases to be used for hospital purposes and to provide care and maintenance for the sick and afflicted poor for both the City of Raleigh and Wake County. It follows, therefore, that the hospital must continue to be operated as a public charitable institution which will include the primary purpose for which the Rex trust was created. With respect to a similar deed from trustees of Watts Hospital to Durham County, *Ervin, J.,* in speaking for the Court in *Hospital v. Commissioners of Durham, supra,* said: "Under the statutes originally enacted as Chapter 933 of the 1937 Session Laws and now codified as Article 13B of Chapter 131 of the General Statutes, Durham County has plenary power to construct, operate and maintain nonprofit hospital facilities. For this reason, the sanctioned conveyance of the Watts Hospital property to Durham County upon the condition 'that the . . . property shall be used for hospital purposes' insures the preservation of the trust estate for the benefit of the ultimate beneficiaries of the trust and the carrying out of the primary purpose of the creator of the trust for all time so far as these things can be done by human foresight and ingenuity in an uncertain world." We do not, however, construe the conditions contained in the proposed deed to increase or diminish the duties imposed by law on Wake County for the care and maintenance of the sick and afflicted poor of the city of Raleigh and Wake County.

In *Hospital v. Cone,* 231 N.C. 292, 56 S.E. 2d 709, the factual situation is distinguishable from that in the instant case, but with respect to the execution of the deed involved therein which contained a reverter clause, this Court, speaking through *Barnhill, J.,* said: "This agreement, in the form of a deed of conveyance, assures the continued maintenance of the property as a memorial park for the use of the public in substantial compliance with the terms of the trust indenture and in a manner equal, if not superior, to that which would be possible by the trustee. Thus the objective of the trust is preserved and its accomplishment is assured."

The City of Raleigh in its brief suggests that the contracts between the trustees of Rex Hospital and the City of Raleigh and Wake County, to which reference has been heretofore made, are not binding on the trustees

of Rex Hospital. These contracts were negotiated pursuant to statutory authority and approved by this Court. There is no evidence of their breach. In fact, the evidence is to the contrary. Hence, we will express no opinion with respect to their validity or as to the rights of the parties thereunder in the event of a breach.

Wake County, in its assignment of error No. 11, raises a question as to the power of the Commissioners to agree to the arbitration of differences that may arise between Wake County and the trustees of Rex Hospital in the interpretation of the operational lease referred to herein, as well as the arbitration of any other dispute that may arise between the parties. Under the provision for arbitration contained in the proposed lease, the findings of the arbitrators are to be submitted in the form of a report or recommendations to both the Commissioners and the trustees of Rex Hospital. It is stated in the lease that "the report shall be given every consideration, but shall not necessarily bind either Wake County or the trustees of the Rex Hospital, it being contemplated that the legal rights of both may be preserved."

"A county may not delegate its power involving the exercise of judgment and discretion." 20 C.J.S., Counties, section 89, page 862. Moreover, to call the provision under consideration an agreement for arbitration is a misnomer. It is merely a prescribed method for obtaining a recommendation for settlement of any dispute that may arise between the parties during the term of the proposed lease, or any renewal thereof. It would seem this purpose could be accomplished as effectively by direct negotiations between the parties, or by appointing a committee or committees for such purpose. Hence, in our opinion, the so-called arbitration clause in the lease should be eliminated therefrom.

Did the Superior Court in the exercise of its equitable jurisdiction, have the power to authorize the trustees of Rex Hospital to convey its property to Wake County, subject to the terms and conditions set out in the proposed deed? We think so. *Devin, J.,* now *Chief Justice,* said in the case of *Johnson v. Wagner,* 219 N.C. 235, 13 S.E. 2d 419 : "One of the most important subjects of equitable jurisdiction is that of trusts, and the construction of charitable trusts created by wills, the determination of the duties imposed upon trustees, the powers granted, and the means of effectuating the ultimate benefits conferred, constitute matters peculiarly within the province and jurisdiction of courts of equity. In the exercise of the supervisory power of the courts of equity over trusts, trustees and those interested in the administration of trusts are permitted to apply to the court for plenary and authoritative advice in relation thereto." *Brooks v. Duckworth,* 234 N.C. 549, 67 S.E. 2d 752.

It is said in *Holton v. Elliott,* 193 N.C. 708, 138 S.E. 3, "Courts of equity have jurisdiction to order, and in proper cases do order, the aliena-

tion of property devised for charitable uses. *Keith v. Scales,* 124 N.C. 497; *Vidal v. Girard,* 43 U.S. 127; 2 How., 127; 11 Law Ed., 205; 11 C.J. 323; Eaton on Eq. 349. The power is not infrequently exercised where conditions change and circumstances arise which make the alienation of the property, in whole or in part, necessary or beneficial to the administration of the charity."

A court of equity has the power to authorize the conveyance of trust property, where, on account of changed conditions the charity would fail, or its usefulness would be materially impaired. *Church v. Ange,* 161 N.C. 314, 77 S.E. 239.

In the final analysis of the factual situation involved on this appeal, it clearly appears that for fifty-three years after the death of John Rex, no steps were taken to effectuate the purposes for which the Rex trust was created except to procure the passage of Chapter 6 of the Private Laws in 1840-41. It was not until 1892 that it was determined that the site devised by John Rex was not suitable for the location of a hospital. In May of that year, authority of the Superior Court was obtained for the sale of the property. This was done and the sum of $10,000 was obtained therefor. However, seventeen more years were to elapse before Rex Hospital opened its doors for the reception of patients. As a consequence of this delay, the beneficiaries under the will of John Rex had to wait seventy years before any benefits were received from the trust. This was as long as the children of Israel were held in Babylonian captivity. Beginning in 1909 and continuing for a period of twenty-eight years the trustees of Rex Hospital operated a general hospital on South Street in the City of Raleigh. In the meantime, the character of the Rex trust was not judicially determined by the courts until May, 1934, in the case of *Raleigh v. Trustees, supra.* Since it was judicially determined that Rex Hospital was a public institution, gifts, grants, and loans of more than a million dollars have been received by the trustees of the hospital in an effort to provide hospital facilities for all the people of Wake County. Most of this money could not have been obtained if the use of the facilities had been limited to a particular class. Moreover, none of the assets of the John Rex trust, including all the donations received by the trustees of the institution, prior to the time it was decided to build the present facilities on Saint Mary's Street, has been used in providing the present facilities, except the nurses' home. Two years after Rex Hospital moved to its present site, the property owned by the trustees on South Street in Raleigh was sold to Wake County, with the approval of the Superior Court, for the sum of $40,000. This sum, together with the $90,000 borrowed from the Reconstruction Finance Corporation, was used for the construction of the nurses' home on Saint Mary's Street. Thus, the present facilities of Rex Hospital, with a replacement value of several

million dollars, were made possible by the generosity of individuals, firms, corporations, benevolent organizations, and others who participated in the enterprise with the understanding that Rex Hospital would be maintained as a public institution, open to all the citizens of Wake County, pay patients as well as the sick and afflicted poor. Now, in order to provide much needed additional hospital facilities for the people of Wake County, for both white and colored, should the taxpayers of Wake County be denied the right to utilize these facilities and to expand and improve them, if they desire to do so? The answer is no.

The exceptions and assignments of error based thereon to the overruling of the demurrer and the motions interposed in the court below, by Stella K. Barbee and Sallie K. Quincy, are overruled.

The record contains a number of exceptions which were not brought forward and assigned as error. Even so, it contains more than one hundred such assignments. Some of these have not been discussed in the briefs and are, therefore, under our rules, deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 562. These assignments of error, as a matter of course, have not been discussed *seriatim*. However, all of them which have been brought forward in the several briefs and discussed have been considered, but we have of necessity discussed only those questions raised by the exceptions and assigned as error that we felt warranted discussion.

In view of the findings of the court below, and in light of the authorities cited, we hold that the judgment entered below, except as modified herein, must be upheld.

Modified and affirmed.