(No. 14906.—Reversed and remanded.)

J. L. DICKENSON et al. Appellees, vs. THE CITY OF ANNA et al. Appellants.

*Opinion filed December 19, 1923.*

1. EMINENT DOMAIN—*when court cannot find title to property in petitioners.* Where a petition for condemnation states that a certain defendant holds the title to the property sought to be condemned and the petitioners do not contest the title on the trial, there is no theory upon which the court can find the title to be in the petitioners.

2. CHARITIES—*when devise is to charitable use notwithstanding conditions are imposed.* A devise to an academy which conducted a school open to the public generally, is a devise to a charitable use although it is upon condition that the property shall not be alienated or incumbered and consists of the testator's homestead, which is to be called a memorial hall but is to be used by the academy in any way that it sees fit.

3. SAME—*the English statute is to be considered in determining what is a "charitable" use.* The English statute of charitable uses .is a part of the common law of Illinois and is to be considered in determining the general spirit and intent of the word "charitable" and the objects which are to be regarded as coming within its meaning.

4. SAME—*when gift to school is to a charitable use.* To constitute a gift to public charity the benefit must not be conferred upon certain and defined individuals but must be conferred upon indefinite persons composing the public or some indefinite class of the public, and a gift to a school which is not strictly private but is open to an indefinite class is a gift to a charitable use although the school is under the control of a particular church or religious denomination.

5. SAME—*gift to charitable use may be made a perpetuity.* A gift to a charitable use, with a direction that no part of it shall at any time be alienated, is a perpetuity which the law permits, as it is a normal characteristic of property devoted to charitable purposes that it is inalienable.

6. SAME—*limitation over to another charity upon a contingency does not violate the rule against perpetuities.* Where a gift for a charitable purpose is to take effect *in præsenti* and the intention in favor of charity is absolute on the part of the donor, the fact that it is made to one charity with a limitation over to another

charity on the happening of a certain contingency which may or may not happen does not violate the rule against perpetuities.

7. SAME—*when gift is presumed for charitable purpose.* A gift to an incorporated institution founded and conducted as a charity is presumed to be for a charitable purpose without its being expressly so stated.

8. SAME—*devise to a municipality for public benefit is a charitable gift.* A devise or a conveyance to a government or to any municipality for the purpose of lessening the burdens of government or taxation of the inhabitants thereof is a charitable gift.

9. SAME—*when city takes devise over on breach of condition of charitable use.* Where a testator devises his homestead to a school or academy, with a provision that if the same shall at any time be "transferred, incumbered or otherwise alienated" it shall go to the city in which the property is situated, a conveyance by the academy to a community high school district, which had been holding school on the property after the academy ceased to function, constitutes a breach of the condition and the city will take the legal title to the property, but the gift being to a charitable use, the city has no right to use the property or to dispose of it for any purpose not beneficial to the general public of the municipality.

APPEAL from the County Court of Union county; the Hon. A. L. SPILLER, Judge, presiding.

JAMES LINGLE, for appellant the city of Anna.

A. NEY SESSIONS, for appellants Russell Tuthill and Sophronia D. Smith.

GEORGE W. CRAWFORD, and ISAAC K. LEVY, for appellants the Willard heirs.

CHARLES E. FEIRICH, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

J. L. Dickenson, L. L. Casper and J. C. Boyd, trustees of schools of township 12, south, range 1, west of the third principal meridian, Union county, appellees, filed their petition in the county court of Union county to condemn a body of land therein described, containing 10.5 acres, for a

community high school site, against the city of Anna, the heirs-at-law of Charles M. Willard, deceased, the residuary legatees of Charles M. Willard, deceased, and the Union Academy of Southern Illinois. All the parties appeared in court by their attorneys after being properly served and filed answers to the petition, claiming title to the property, except the Union Academy, which made default. All of the answering defendants conceded the right of appellees to condemn the property for the purposes aforesaid, and the only questions before the court were as to the lawful owner or owners of the premises and the value of the property sought to be condemned. A trial was had before the court without a jury, and the court found that none of the defendants own any interest in the land, that the petitioners are the legal owners thereof, and entered judgment dismissing the petition. Motions for a new trial by all the answering defendants were overruled and they perfected their appeal to this court.

The proof in the record discloses the following facts: Charles M. Willard died testate December 30, 1893, seized in fee simple of the real estate in question. He left no widow and no child or children or descendants thereof surviving him. He left surviving him as his next of kin the defendants named in the petition answering the designation "the Willard heirs." Mrs. Damietta P. Tuthill, named as the life tenant in the will, was the mother-in-law of the testator, and she died July 27, 1896. The Union Academy was incorporated May 17, 1884, under the laws of Illinois. Its object, as mentioned in its charter, was higher education, and it conducted a school across the street from the premises in question at the time the will was made. After the probate of the will the academy took possession of the premises and in about 1906 erected a school building thereon and afterwards conducted a school therein, using the memorial hall as a lodging for students and a boarding house for teachers. The academy has not conducted any school

or other institution of learning since the fall of 1917 for lack of patronage, as it was unable to compete with the coming community high schools. It was supported from tuitions and funds contributed by divers persons. The premises in question are in the city of Anna, about eight small blocks from the business section thereof and near the boundary line between the cities of Anna and Jonesboro. The larger portion of the tract is unlevel and breaks rapidly to the west into a deep ravine. The community high school district aforesaid includes Anna and Jonesboro and surrounding country. That school has an attendance of about three hundred, which is rapidly increasing. For the past three years the academy has been rented to the community high school. The academy has ceased to function as such, and on September 17, 1921, it conveyed by quitclaim deed its interest in the property to the community high school for the sum of $2500, which is apparently only a nominal sum as compared with the fair value of the property.

The material portions of the testator's will in determining the title to the premises in question are clauses 2, 3, 4, 5, 6, 18 and 19 thereof. Clause 2 is in the following language:

"I give and devise unto the Union Academy of Southern Illinois the following described real estate, to-wit: [Here follows a description of the premises described in the petition.] The above described real estate is hereby devised and given to said Union Academy in perpetuity, and the same shall at no time be transferred, encumbered or otherwise alienated from the purposes herein expressed and intended, and if the same, or any part thereof, shall at any time be conveyed, transferred or encumbered, by deed, mortgage or otherwise, then in such case I do devise, give and bequeath all of the above mentioned real estate to the city of Anna, Illinois. The foregoing real estate includes and embraces my homestead, and I desire that the same be

310—15

known and called, 'Charles M. Willard's Memorial Hall,' continuously. I devise and give unto my mother-in-law, Mrs. Damietta P. Tuthill, a life estate in all of the foregoing real estate, giving and granting unto her the exclusive right of possession and control of the same during her natural life."

By clause 3 of the will the testator devises to the Union Academy 15.33 acres of other land in Union county, with this explanation and limitation only: "Placing no restraint against the sale of the same or any part thereof, provided such sale or sales be made to persons intending to build residences or public buildings thereon." This tract is described as an addition to the town of Anna, aforesaid, platted and surveyed by a county surveyor.

Clause 4 of the will devises to the Union Academy 280 acres of land situated in Union county, with no explanation or limitation whatever except as is found in the fifth clause of the will.

Clause 5 devises to the Union Academy 240 acres of land situated in Pulaski county, Illinois. This devise is followed by three paragraphs in this language:

"I do will and direct that none of the foregoing real estate mentioned in this instrument shall at any time be encumbered by mortgage, trust deed or other lien, and that none of the said lands mentioned in the fourth and fifth clause of this will shall be sold or conveyed by deed or otherwise disposed of in fee simple until after the expiration of ten years from the date of my death. Whenever, at any time, any of the real estate hereby bequeathed and given to the said Union Academy shall be sold, the money which is or may be realized from such sale or sales shall be placed and used as a perpetual endowment fund for the benefit of the said Union Academy, and the interest, only, arising from the loaning of such endowment fund shall be used to pay the debts and running expenses of said Union Academy.

"I also will and direct that all of the rents, issues and profits arising from the leasing or renting of said real estate shall also be applied to the payment of the making of the necessary improvements, the payment of taxes, insurance and repairs, which will become necessary to be .paid in the care and management of the said real estate, after which the remainder of the money arising from the leasing and renting of the said real estate shall be applied to the legitimate and necessary running expenses of said Union Academy.

"I also desire and direct that the said endowment fund and the management and control of all of said real estate herein and hereby given · and devised to the said Union Academy shall be managed and controlled by three local trustees, each of whom shall be a resident of the city of Anna, Illinois, while acting as such trustee, all of whom shall be chosen and selected by the board of trustees of the said Union Academy."

By the sixth clause of the will the testator simply gives and bequeaths unto the Union Academy "my library, consisting of all of my books, pamphlets and newspapers, and one book-case."

In the eighteenth clause of his will he gives and bequeaths to the Union Academy "all the money, promissory notes, accounts, stock in the Anna Building and Loan Association and stock in the Southern Illinois Fair Association, which shall remain and belong to my estate after the full payment of all the sums of cash or money given and devised in clauses first, eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth of this my last will," and when converted into cash is to be added to and form a part of the endowment fund of the Union Academy and subject to all the conditions imposed on said fund in the will.

The nineteenth or residuary clause is in this language: "I hereby give and devise all of the residue and remainder

of my estate, real, personal and mixed, which I may own at the time of my death or which may revert to me by reason of any contingency in this will, to Harlan P. Tuthill, Belle C. Barr, Mary B. Jenks and Laura M. Tuthill in equal parts by valuation, to be so divided by themselves after my death," and in case they cannot agree to such a division by themselves, three disinterested persons selected by them shall make the division. Mary B. Jenks is the only person mentioned in clause 19 now living, but the heirs and descendants of the other named persons in said clause are made parties defendant to the bill and answered as aforesaid.

The petition of appellees stated that the city of Anna held the title to the property aforesaid and did not make any other contention on the trial. There is no theory, therefore, upon which the court could find the title to the property in the petitioners under the allegations of the petition. The city of Anna, the Willard heirs and the Tuthill claimants all claim title to the property. The city of Anna claims the property under the second clause of the will and the subsequent conveyance by the Union Academy, and argues that the devise to the Union Academy was a charitable gift which was forfeited by the conveyance and that the title thereupon vested in the city of Anna, and that it took the property as a charitable gift over after the forfeiture aforesaid. The Willard heirs, as heirs of Charles M. Willard, claim that the devise over to the city of Anna, or to the Tuthill claimants under the residuary clause, was void in each instance because violative of the rule against perpetuities, and that all the devises failed and that they take as heirs aforesaid. . The Tuthill claimants under the residuary clause contend that the devise to the Union Academy was not a gift in charity and that the devise over was void because violative of the rule against perpetuities, and that they took title under the residuary clause.

The devise to the Union Academy was unquestionably a charitable gift, as were all the other devises to it, as is

clearly shown by the will. All of the property devised to the academy by the will was devised for the purpose and use of that institution and was to be used and enjoyed by it as an endowment fund. It is true that there was a provision against encumbrances and alienation of the property described in the second clause of the will and a provision in that clause that the property be known continuously as the Charles M. Willard's Memorial Hall, but there is no escaping the conclusion that the property was to be used by the academy in any manner that it saw fit, so long as the provisions against alienation and encumbrances were not violated. It had the option to rent the property and use the proceeds as an endowment after paying expenses, taxes, etc., as it did do, and this property, as well as all the other property devised to the academy, was to be managed and controlled by three local trustees, residents of the city of Anna and selected by the board of trustees of the Union Academy. No additional language was necessary to make it clear that this was a charitable gift. The statute of charitable uses (43 Eliz. ch. 4,) is a part of the common law of Illinois and is to be considered in determining the general spirit and intent of the word "charitable" and the objects which are to be regarded as coming within its meaning. *Hoeffer* v. *Clogan,* 171 Ill. 462; *Heuser* v. *Harris,* 42 id. 425; *Crerar* v. *Williams,* 145 id. 625; *Grand Prairie Seminary* v. *Morgan,* 171 id. 444.

It is stated in 11 Corpus Juris, beginning at page 316, that gifts for schools and scholars are expressly mentioned in the Statute of Elizabeth, and that gifts for the advancement of learning, science and the useful arts generally, either with or without particular reference to the poor, are to be regarded as charities. This is particularly true, as the author further states, where the gifts for educational purposes are not improperly conditioned or restricted, and such gifts are usually regarded by the courts of this country with special favor. Such a charitable gift may be for

the support of the public or free schools, or for the found-
ing, establishment, support and maintenance of other schools
or institutions of learning which are not strictly private, and
even though they may be under the control of a particular
church or religious denomination. It does not matter that
such a gift may result in a benefit to the rich as well as the
poor in the community where the school is located, and it
seems to be sufficient if the gift is not restricted to a few
individuals in the community which the school is intended
to benefit. There were absolutely no restrictions or condi-
tions placed upon the gifts to the Union Academy by the
testator except those against alienation and encumbrances,
which he had a right to make under the law, and the prop-
erty in question is not an exception in these particulars.
The academy was to have the full use and benefit of this
property and of the rents and profits therefrom, and was
to hold it in perpetuity so long as it did not violate the
provision against alienation. The gift constituted a public
charity, and the rule prevails that in such a gift the benefit
must not be conferred upon certain and defined individuals
but must be conferred upon indefinite persons composing
the public or some indefinite class of the public. (*Skin-
ner* v. *Northern Trust Co.* 288 Ill. 229.) From whatever
angle the question may be viewed, as it seems to us, only
one conclusion can be reached, and that is that the gift
was a charitable gift to the public generally benefited by
the academy.

A gift to a charitable use with a direction that no part
of it should at any time be alienated does not create a per-
petuity that the law forbids, but merely a perpetuity which
the law permits. (21 R. C. L. 328.) It is further laid
down by that author on the same page, that charities form
an exceptional class in reference to the rule against restraints
of alienation, and that conditions in restraint of alienation
may be inserted in devises to charity, because it is a nor-
mal characteristic of property devoted to charitable purposes

that it is inalienable.   Hence it is now recognized by a large number of the authorities and courts, including this court, that where a gift for a charitable purpose is to take effect *in præsenti* and the intention in favor of charity is absolute on the part of the donor, the fact that it is made to one charity with a limitation over to another charity on the happening of a certain contingency which may or may not happen, does not violate the rule against perpetuities. (5 R. C. L. 301; Gray's Rule Against Perpetuities,— 3d ed.—sec. 597, p. 476; *Green* v. *Old People's Home,* 269 Ill. 136.)   This same rule prevails in England and has been held in a number of cases, including that of *Christ's Hospital* v. *Grainger,* 16 Sim. 83.

The real question in this case is whether or not the devise over to the city of Anna may also be regarded as a charitable gift.   Our conclusion is that it should be so regarded.   The rule has been frequently announced that a gift to an incorporated institution founded and conducted as a charity is presumed to be for a charitable purpose without its being expressly so stated.   (11 Corpus Juris, p. 328.)   The devise over to the city of Anna does not mention that it is for any specific charity or purpose, but the whole instrument indicates clearly that this devise to the city of Anna was for the benefit and use of its inhabitants. There is no use to which this property could be legally put by the city of Anna that would not result in a benefit to the inhabitants and thereby lessen the burden of taxation by the city.   The city could not legally give it away or put the property to any use that would not be a use beneficial to the city and consequently a benefit to its inhabitants.   It is thoroughly settled by the authorities that where a devise or a conveyance is made to a government or to any municipality for the purpose of lessening the burdens of government or taxation to the inhabitants thereof, such devise or gift is a charitable gift.   In 6 Cyc. 922, is found this statement: "A gift to the government is a charitable purpose;" and

on page 943 of that volume is found this language: "The gift, if public and for the benefit of undetermined persons, need not be to charitable institutions." In the case of *Nightingale* v. *Gourburn,* 5 Hare, 486, the will provided for an annuity to the widow, and after her death that the residue, converted into money, should "be paid to the queen's chancellor of the exchequer for the time being, and to be by him appropriated to the benefit and advantage of my beloved country, Great Britain." The court in that case held that it was a charitable gift and that it was not necessary that the word "charitable" be used, but that it sufficiently appeared from the words in the will that it was a bequest to a trustee for purposes of a general or wholly unrestricted nature, for. the benefit and advantage of a particular class,—a large class: the British public. It was specially held in that case that the chancellor of the exchequer under the terms of that will could not appropriate the fund to purposes in which the British public had no direct or immediate interest, and for that reason it should be regarded as a charity. That is the situation in this case. The property being absolutely conveyed to the city of Anna, the city would have absolutely no right to use it or to dispose of it for a purpose that was not beneficial to the general public of Anna. We therefore hold that the city of Anna holds the legal title to this property, and that the county court erred in holding otherwise and in refusing to value the property as the property of the city of Anna.

The judgment of the county court is therefore reversed and the cause is remanded for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*