(No. 33029.—
THE CATHOLIC BISHOP OF CHICAGO *et al.,* Appellees. *vs.*
LORETTA SHEILS MURR *et al.,* Appellants.

*Opinion filed May 24, 1954.*

LOUIS LAGGER, GEORGE N. BLATT, JR., and WISE &
WISE, all of Joliet, for appellants.

FRANCIS A. DUNN, of Joliet, for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of
the court:

This appeal presents for decision the construction of a
deed conveying property for use as a cemetery. From the
pleadings and a stipulation of facts it appears that on

September 3, 1849, Michael Shields, John Belz and Edward Conlon, and their respective wives, in consideration of $100, sold and conveyed to the Catholic Bishop of Chicago and his successors in office the property in question, hereafter referred to as Lot 56, "to have and to hold the same together with all and singular the tenements hereditaments and appurtenances unto the same belonging or in anywise appertaining unto him the said Right Reverand [*sic*] James Van De Velde Catholic Bishop of Chicago aforesaid and to his successors in office forever in trust for the following purposes (To Wit) that the said Lot or parcel of land shall at all times be used as a Burial Ground for the Catholic population of Joliet in Will County aforesaid and its vicinity. And for Charitable and literary purposes and that the Grantee herein and his Successor or Successors in office shall have no power or authority whatever by virtue of this Deed to sell let hire or in any manner dispose of said lot or any part or parcel of the same."

Prior to Setember 3, 1849, there existed in the town of Joliet as "the Catholic population of Joliet in Will County aforesaid and its vicinity" only the then members of St. Patrick's parish, who were then and still are an unincorporated association of persons. The church was then located approximately six city blocks due east of Lot 56, and the members of St. Patrick's parish constructed a cemetery on the eastern three-fourths of Lot 56 which became and is still known as St. Patrick's Cemetery.

In 1922, the city of Joliet extended Hunter Avenue, one of its public thoroughfares, northward across Lot 56 from its southern boundary to its northern boundary. The part of Lot 56 lying east of Hunter Avenue constitutes the eastern three-fourths of Lot 56, and ever since 1849 has been and still is used as a burial ground by the members of the St. Patrick's parish. That part of Lot 56 lying west of Hunter Avenue is a narrow triangle bounded on the north by Jefferson Street, which, at that point, is an

Illinois State highway known as State Route No. 52; on the west by Raynor Avenue, one of the principal north and south bound streets of Joliet; on the south by Washington Street, and on the east by Hunter Avenue. It has thus far been kept free from all interments, and for more than twenty-five years has been used as a public playground for children. The disposition of this western quarter of Lot 56 is the issue in this case.

The Catholic Bishop of Joliet, as successor in office to the grantee in the deed, and the Catholic Bishop of Chicago, desiring to sell this part of Lot 56, brought an action in the circuit court of Will County to construe the deed of September 3, 1849. The defendants were named and unknown heirs of the original grantors and several members of St. Patrick's parish. The plaintiffs asked that the provision in the deed prohibiting alienation be declared invalid, and that they be decreed to hold the property in fee simple, free of any restriction as to sale. In the alternative they asked the court, if it should construe the deed as creating a charitable trust, to direct the sale of the premises as no longer suitable for cemetery use, and to direct the application of the proceeds to such Catholic charitable or literary uses, or the acquisition of Catholic burial grounds as the court deemed just and equitable. The trial court accepted the plaintiff's first contention and entered a decree accordingly. Since a freehold is involved the defendants have appealed directly to this court.

A condition in a deed which wholly forbids alienation, as does the condition in this conveyance, is invalid unless the deed creates a charitable trust. (*McFadden* v. *McFadden*, 302 Ill. 504; *Stubblefield* v. *People's Bank*, 406 Ill. 374.) The decision of this case therefore turns on whether a gift of land to be used for cemetery purposes is a gift for a charitable use. The general nature of a charitable trust has often been defined by this court. It is a trust whose purpose is the mental, spiritual, or physical benefit

of the public at large, or a part of it, as distinguished from one for purely private benefit or profit. (*Stubblefield* v. *People's Bank,* 406 Ill. 374, 385; *Skinner* v. *Northern Trust Co.* 288 Ill. 229, 232; 2A Bogert, Trusts, sec. 361.) Familiar examples of charitable uses for religious purposes are gifts for the erection of a church, (*Trafton* v. *Black,* 187 Ill. 36,) and for saying masses for the testator and members of his family. *Hoeffer* v. *Clogan,* 171 Ill. 462.

On its face a gift of land for use as a cemetery would seem to be charitable, even under the view which regards a charitable use as one which discharges in part what may fairly be regarded as a governmental function. (See Ill. Rev. Stat. 1953, chap. 21, pars. 4, 13; chap. 24, par. 23-84.) Past decisions of this court, however, are said to hold that such a trust is not charitable, and that it cannot stand unless expressly authorized by statute. If express statutory sanction is required, it is found in the act of February 24, 1845. (Laws of 1845, p. 322; Ill. Rev. Stat. (Treat) 1858, p. 983.) That act, designed to protect the rights of successors in title to various bishops to whom gifts in trust had been made, declared valid and effective all gifts of land made, or thereafter to be made to the Catholic Bishop of Chicago, among others, "for the use and benefit of any religious congregation of Roman Catholics, or for the support, aid and maintenance of any hospital, almshouse, seminary, church, parsonage, or for burial grounds, or other religious or charitable purposes." See also Ill. Rev. Stat. 1845, chap. 22; chap. 25, par. 44.

We also think this trust may be regarded as charitable independently of that legislation. The decisions cited tc the contrary are not controlling, for they involve gifts of property in trust to provide for the upkeep of the settlor's grave. (See *Mason* v. *Bloomington Library Assn.* 237 Ill. 442; *McCartney* v. *Jacobs,* 288 Ill. 568; *McNamara* v. *McNamara,* 293 Ill. 54; but cf. *Stubblefield* v. *People's Bank,* 406 Ill. 374.) There is a recognized difference be-

tween establishing a trust for the upkeep of a private grave and donating land for use as a cemetery. (*Chew* v. *First Presbyterian Church,* 237 Fed. 219, 223-224; *Parker* v. *Fidelity Union Trust Co.* 2 N.J. Super. 362, 63 Atl. 2d 902, 915-917; 2A Bogert, Trusts, sec. 377; Restatement of Trusts, sec. 374, comment h.) The public character of the latter is precisely the factor which distinguishes a charitable from a private trust. The cemetery here, while not available to the public at large, was for the use of "the Catholic population of Joliet in Will County * * * and its vicinity." That restriction upon sectarian adherence and geographical residence does not, under our decisions, make the trust too limited in benefits to be characterized as charitable. *Grand Lodge A. F. and A. M.* v. *Board of Review,* 281 Ill. 480.

We hold, therefore, that this gift of land in trust to be used for cemetery purposes is a charitable trust, and that an absolute restraint upon alienation of that land is therefore not invalid.

It does not follow, however, that a court of equity, in the exercise of its traditional power over charitable trusts, may not decree that the land, or some part of it, may be sold. If the western quarter of Lot 56 because of its severance or because of changes in the surrounding area has in fact become unsuitable for the declared purpose of the trust, or if the sale of the western quarter of Lot 56 is desirable to provide funds for the fulfillment of the basic purpose of the trust, the provision of burial grounds, then the sale may properly be decreed.

There was evidence tending to show that the western quarter of Lot 56 is not now suitable for cemetery purposes. The trial court, however, having found that no charitable trust had been created, did not pass upon the question of whether present circumstances justified the sale of the property, or decide how the proceeds should be applied if such sale were authorized. The decree of the

circuit court is accordingly reversed and the cause remanded, with directions to take such further steps as may be necessary in order to make findings and enter a decree on this branch of the case.

*Reversed and remanded, with directions.*