WACHOVIA BANK AND TRUST COMPANY, Trustee, and THE ALEXANDER CHILDREN'S CENTER, a Charitable Corporation v. JOHN THOMASSON CONSTRUCTION CO., INC., a Corporation

No. 11

(Filed 11 July 1969)

**1. Trusts § 4— charitable trust — duration — rule against perpetuity**

The rule against perpetuity does not apply to charitable trusts, and such trusts may continue indefinitely. G.S. 36-21.

**2. Trusts § 10; Wills § 42— private trust — restraint on alienation**

A restraint on alienation is against public policy and void as to private trusts.

**3. Trusts § 4— charitable trust — restraint on alienation**

An absolute restraint against alienation in a gift to a charitable trust is not void.

**4. Trusts § 4— charitable trust — modification of trust — equitable jurisdiction**

Courts in the exercise of their equitable jurisdiction may modify the terms of a charitable trust in order to preserve the trust estate or protect the cestuis, when it appears that some exigency, contingency or emergency not anticipated by the trustor has arisen requiring a disregard of a specific provision of the trust.

**5. Trusts § 4— charitable trust — change of circumstances — sale of property**

In order to accomplish the ultimate purpose or intent of the trustor, the court may order real property sold and reinvested in other property when a change in circumstances makes such sale necessary to accomplish the purposes of the trust, even though the trust forbids the trustees to mortgage or sell the property.

**6. Trusts § 4— charitable trust — restraint on alienation — sale of trust property — sufficiency of evidence**

In trustee's action to determine its right to convey fee simple title to property which it holds in trust for benefit of a charity under deed providing that the trustee is to hold the property forever with no power of alienation, trial court properly exercised its equitable jurisdiction in permitting the sale of the property on the ground that changed conditions unforeseen by the trustor threatened the purposes of the trust, where there is evidence that (1) the property, consisting of some 450 acres, was a thriving dairy farm at the time the trustee acquired the property more than thirty years ago but is now unproductive as result of the unprecedented growth of a nearby city to the property's boundaries, (2) the property has a value in excess of one million dollars but does not produce income sufficient to pay ad valorem taxes, which amounted to $2367 in a recent year, (3) the trustee has no funds to pay the taxes, and (4)

the most productive use of the property is sale for single-family residential development and reinvestment of the proceeds of the sale.

BOBBITT, J., concurring in result.

SHARP, J., joins in concurring opinion.

ON writ of *certiorari* to the North Carolina Court of Appeals. Same case reported below in 3 N.C. App. 157, 164 S.E. 2d 519.

Civil actions alleging two causes of action: The first cause of action is for specific performance of a land sale contract executed by a charitable trust; the second cause of action is that if the restraint on alienation of the trust property is valid, the court in the exercise of its equity jurisdiction should permit the trustees of the charitable trust to deviate from the terms of the trust because, owing to circumstances not known to the creator of the trust and not anticipated by him, compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, and that defendant be required to carry out his contract for the purchase of a part of the trust property by accepting a deed from the trustees for the same and to make payment for it.

These facts appear from the allegations and admissions in the pleadings and from the unchallenged findings of fact by the trial judge: Plaintiff, The Alexander Children's Center (hereafter called Alexander), is a non-profit charitable corporation which was organized as "The Alexander Home of Charlotte, North Carolina," pursuant to Chapter 225 of the 1903 Private Laws of North Carolina. The object of the institution was generally to promote and protect the well-being of the young, and the institution for many years was primarily engaged in custodial care of children. In 1946 the Board of Directors of Alexander requested a survey of the program by a professional team from the Child Welfare League of America. This team found that the need for strictly custodial care for orphans and other needy children was declining, that the need for specialized institutional treatment for emotionally disturbed children was increasing, and that there was no community treatment center of this sort in North Carolina. As a result of this survey, the type of care offered by Alexander was modified to consist of in-patient care for emotionally disturbed children, and the name of Alexander was changed on 9 September 1963, by amendment to the charter duly adopted, to the Alexander Children's Center.

By deed dated 17 October 1930, duly recorded in the Mecklenburg County Public Registry, E. T. Garsed conveyed certain lands

to the Charlotte National Bank (hereafter called Charlotte) as trustee for the benefit of Alexander. Wachovia Bank and Trust Company (hereafter called Wachovia), a corporation organized and doing business in the State of North Carolina, is the corporate successor of Charlotte. The deed from Garsed to Charlotte conveyed to Charlotte the land therein described, at the expiration of the natural life of Garsed, the remainder in and to this land upon the following trusts: "To hold said land forever for the sole use and benefit of the Alexander Home . . . and to that end to take charge of, manage, rent and have general control of said tract of land and to turn over the net revenue derived therefrom to the proper officers of the said Alexander Home, annually, or more often if it be practicable to do so. . . . Provided further, that after the death of the party of the first part, said lands shall be held forever for the above set out trust, and that the party of the second part shall have no power to sell or convey the same either with or without the consent of the Alexander Home. . . ."

The habendum clause in this deed is as follows: "To HAVE AND TO HOLD the remainder, at the expiration of the natural life of the said party of the first part, of the said tract unto the Charlotte National Bank, its successors and assigns forever, upon the uses and trusts above set out."

On 12 October 1967 Wachovia and defendant entered into a contract under the terms of which Wachovia, with the concurrence of the governing body of Alexander, agreed to sell to defendant and defendant agreed to buy 10.003 acres more or less of this land for the sum of $30,009. Thereafter, on 7 December 1967 defendant notified Wachovia by letter that defendant would refuse to accept the tender of the deed to the property in question or to pay the contract price, declining to go through with the contract and demanding the return of its binder check. The sole reason defendant refused to accept the deed to the 10.003 acres more or less or pay the purchase price was because it alleged that plaintiffs could not convey a valid fee simple title to the property.

For the first cause of action plaintiffs allege that the total restraint on alienation in the deed of Garsed is void as a matter of law.

For the second cause of action plaintiffs assert that if the restriction on total alienation in the Garsed deed is not void as a matter of law, then the court in the administration of a charitable trust ought, in the exercise of its equity jurisdiction, to allow a sale of a part of

the land so that the remainder may be properly utilized to carry out the intent of Garsed, the grantor.

The admissions in the pleadings and the unchallenged findings of fact show that the Garsed property consisted of some 450 acres of land; that the property was once a thriving dairy farm at the time of the death of Garsed and the acquisition of the property by the trustee; that due to the growth of Charlotte and other changes, the property is no longer productive; that the property has a value in excess of one million dollars, but that in its present state it does not produce enough income to pay ad valorem taxes; that the ad valorem taxes on this property for 1967 amounted to $2,367.79; that these taxes are unpaid and the trustee has no funds belonging to the trust to pay them.

An assistant trust officer of Wachovia testified:

"The development that has taken place adjacent to the property is all residential development of the single-family type. It is not feasible to build this sort of residence on leased land. The property is at present located so far from downtown Charlotte that there has been no interest in it as leased land for apartment-type dwellings. Virtually all of the apartment development that has taken place in Charlotte has taken place considerably closer to the center of town.

\*　　　　\*　　　　\*

"Needless to say, if the land not now necessary to the purposes of The Alexander Children's Center could be sold and the proceeds held in trust and invested, this trust would produce a very substantial annual income for the use of the beneficiary. As matters stand, the trust is actually running an annual deficit because the value of the land and the ad valorem taxes have gone up while the income has gone down.

"When this trust was created the land in question was a thriving dairy with adjoining woodland and pasture land a number of miles from the city limits of Charlotte. It was producing income and there was no reason to think that it would not continue to do so. The unprecedented and then unforeseen growth of the City of Charlotte right up to the boundaries of this property, together with the drastic change in economic conditions and more particularly in the dairying industry have rendered the land unproductive for any purposes springing from the use of the land itself that would be compatible with the presence of the Center on part of the land. At the same time the land has be-

come highly desirable for residential purposes. The Alexander Children's Center has now moved its facilities to a part of the property. Single-family residential development of the quality that the prospective purchaser intends to place on the land will serve to insulate the Center against the kind of encroachment of undesirable adjoining land use that forced it to move from its former location, while at the same time giving the Center a substantial income from the remainder of the property, something which, along with the providing of a future site for the location of the Center, was one of the expressed intentions of the donors of the property."

W. Banks McClintock, Jr., a dealer in real estate, testified:

"Economic competition long ago forced the dairy farm out of business.

"Taking into consideration the needs of the Center itself as well as the economic factors involved, in my opinion single-family residential development of the type that has taken place on the adjoining property would be the most desirable use to which the land surrounding the Center could be put. It is economically unfeasible to construct single-family dwellings on leased land. In my opinion as a realtor the most productive use to which the land as a whole could be put would be to sell parcels of it from time to time as market conditions are favorable, investing the proceeds in some income-producing investments.

"Doing this would also insure that the land adjacent to the Center would be used for residential purposes, the most desirable use of it from the Center's point of view, by making it available to residential home builders at a time when interest in this particular portion of Mecklenburg County for residential development is at its peak. Holding the land longer might well result in the development of the surrounding area proceeding in some other direction, thereby impairing the value of the Garsed land for residential purposes, to the disadvantage of The Alexander Children's Center. Some of the land along the Monroe Road and the railroad which runs alongside it through the property may ultimately prove to be land that can best be utilized for selected business uses. This land is sufficiently distant from the location of the Center and sufficiently separated from it by the topography of the land that its use for such purposes at some future time would not be detrimental to the Center. Such use might also prove to be the most advantageous to the Center from an economic standpoint. I understand that this part of the prop-

erty is not involved in the pending suit and that any disposition of this land would be subject to Court approval at such time as the Trustee proposed to convey it."

In respect to the first cause of action, defendant admits all the material allegations of fact in the complaint except that it denies that the restraint on alienation in Garsed's deed is void as a matter of law. As to the second cause of action relating to the allegations as to the present condition of the property, its low income, and the desirability to sell certain land, defendant in its answer states that it does not have information sufficient to form a belief and therefore denies the same.

When the case was called for trial, the parties waived trial by jury.

The trial court among its findings of fact made these findings:

"5. That in accordance with the wishes of the donors of the land the plaintiffs have located The Alexander Children's Center on the land, but that the ability of The Alexander Children's Center to develop and expand its facilities and the services it offers to fully carry out the intentions of the donors is being materially impaired by a lack of assured operating income and funds for capital improvements, something that the donors of the land intended for the land to produce.

"6. That it is necessary and in the best interests of The Alexander Children's Center that the administrative provisions of the trust be amended so that a portion of the property in question may be sold and the proceeds of this sale held in trust by the trustee and invested so as to produce income to allow for the full development and utilization of that part of the property which the plaintiffs desire to retain for the use of The Alexander Children's Center.

"7. That it is only by so doing that the intention of the donors of the land can be fully realized."

The trial court made these findings of fact in respect to the second cause of action:

"1. That it is necessary and in the best interests of the Alexander Children's Center that those portions of the 450 acre tract held in trust for it which are not necessary to the purposes of The Alexander Children's Center be sold and the proceeds invested in order that that land retained may be developed and utilized to carry out the purposes of the trust.

"2. That, there having been a substantial, unforeseen change of conditions since the gift of land was made, which change of conditions materially impairs the realization of the donors' intent, the Court has the power to modify the administrative provisions of the trust to allow a portion of the property to be sold in order to develop the rest of the property, this without regard to whether or not the restrictions on alienation contained in the deed to the property are or are not valid as a matter of law or are or are not valid and binding on the trustee and The Alexander Children's Center."

The court further finds with respect to both causes of action "that the sale of the property which is the subject of this suit is in the best interests of The Alexander Children's Center and that so doing will help to achieve the purposes for which the trust was created, and that the Court in the exercise of its inherent equitable power to supervise the administration of charitable trusts ought to allow and require the conveyance of the land which is the subject of this suit."

The court adjudged that Wachovia and defendant carry out the terms of the contract of 12 October 1967. It further ordered "that this cause be retained on the docket of this Court so that the Court may from time to time consider upon motion the sale by the plaintiffs of land under the additional options heretofore granted to the defendant and of such additional parcels of land as they may from time to time desire to be allowed to convey. It is further ordered that the defendant be taxed with the costs of the Court."

Defendant excepted to the judge's conclusions of law in both causes of action and to the judgment and appealed to the Court of Appeals.

The Court of Appeals held that the trustee took title in fee simple absolute upon the death of the life tenant without restraint or restriction on the power of alienability, and that under the existing facts and circumstances the Court, in the exercise of its equitable jurisdiction, could permit the sale of the real property.

Defendant petitioned this Court for a writ of *certiorari* to the North Carolina Court of Appeals to review its decision. We allowed the petition on 31 January 1969.

*James O. Cobb for defendant appellant.*

*Helms, Mulliss & Johnston by E. Osborne Ayscue, Jr., for plaintiff appellees.*

PARKER, C.J.

. This appeal presents two questions for decision: (1) Is the restriction on alienation in the deed creating the charitable trust valid? (2) May the court, in the exercise of its equitable jurisdiction, authorize a sale of the real property in said trust under the facts and circumstances shown by the record? We will consider these questions in their numerical order.

**[1-3]** It is well settled in this jurisdiction that the rule against perpetuity does not apply to charitable trusts, and such trusts may continue indefinitely. *Trust Co. v. Williamson,* 228 N.C. 458, 46 S.E. 2d 104; *Penick v. Bank,* 218 N.C. 686, 12 S.E. 2d 253; G.S. 36-21. Nevertheless, whether the restriction in the Garsed deed was void as being a restraint upon alienation presents a more serious question. The general rule in North Carolina as to private trusts is that a restraint on alienation is against public policy and void. *Douglass v. Stevens,* 214 N.C. 688, 200 S.E. 366; *Williams v. Sealy,* 201 N.C. 372, 160 S.E. 452; *Trust Co. v. Nicholson,* 162 N.C. 257, 78 S.E. 152. However, we find little authority in North Carolina on the question of whether an absolute restraint on alienation in a gift to a charitable trust is void.

The Court of Appeals in holding that the restraint in the Garsed deed was void relied solely on the case of *Hass v. Hass,* 195 N.C. 734, 143 S.E. 541. In that case the Court, in construing a devise by will, stated:

> "The second sentence in Item 2 of said will, to wit: 'It is my will that my real estate be not sold, but that the rents and profits for ninety-nine years be paid to the authorities aforesaid for the blind children as aforesaid,' if construed as an attempt to restrain the alienation of the real estate, devised in fee to the defendant, the State School for the Blind and Deaf, is of no legal effect and is void in law. *Latimer v. Waddell,* 119 N.C. 370. These words may be construed as merely expressing the wish of the testatrix, without any intention on her part to affect the title to or estate in the land devised in fee simple to defendant, the State School for the Blind and Deaf, for the use and benefit of the indigent children of the State, born blind, of the Caucasian race. *Springs v. Springs,* 182 N.C. 484; *Carter v. Strickland,* 165 N.C. 69. But however these words may be construed, there was no error in the judgment that said words have no legal effect with respect to the title to said real estate devised to defendant, the State School for the Blind and Deaf. The said defendant holds title to the land described in the com-

plaint in fee simple as trustee for the indigent children of the State, born blind, of the Caucasian race. This is a charitable trust and is valid. *Ladies Benevolent Society v. Orrel, ante,* 405; Public Laws 1925, ch. 264."

An analysis of the cases cited in *Hass v. Hass, supra,* reveals that the decision in both *Springs v. Springs,* 182 N.C. 484, 109 S.E. 839, and *Carter v. Strickland,* 165 N.C. 69, 80 S.E. 961, is based on the proposition that the words used are precatory words, merely expressing the wish of the donor rather than words of absolute restraint on alienation. Further, the case of *Latimer v. Waddell,* 119 N.C. 370, 26 S.E. 122, referred to a private trust and thus is not applicable to the question here posed. We therefore conclude that the result in the *Hass* case turned on the fact that the attempted restraint was precatory — a mere wish.

In *Brooks v. Duckworth,* 234 N.C. 549, 67 S.E. 2d 752, the Court seemingly recognizes that charitable trusts are exceptions to the rule that a restraint on alienation is void. There the Court, considering a charitable trust in which the trustees were prohibited from mortgaging or disposing of the trust property, said:

"... *This provision clearly limited the right of the trustees in relation thereto,* but would not prevent a court of equity from using its power, in a proper case, to modify the terms of the trust to the extent necessary to prevent the failure of the trust and to effectuate the primary purpose of the trustor. *Henshaw v. Flenniken,* 183 Tenn. 232, 168 A.L.R. 1010, 1022 note." (Emphasis ours.)

Since the holdings of this Court on this question are meager and somewhat nebulous, we turn to other jurisdictions for enlightenment.

The general rule is that a condition against alienation in a gift for a charitable trust is not invalid or void. *Alexander v. House,* 133 Conn. 725, 54 A. 2d 510; *Dickenson v. City of Anna,* 310 Ill. 222, 141 N.E. 754; *Stubblefield v. Peoples Bank of Bloomington,* 406 Ill. 374 94 N.E. 2d 127; *Catholic Bishop of Chicago v. Murr,* 3 Ill. 2d 107, 120 N.E. 2d 4; *Sisters of Mercy of Cedar Rapids v. Lightner,* 223 Iowa 1049, 274 N.W. 86; *Smart v. Town of Durham,* 77 N.H. 56, 86 A. 821; *Mills v. Davison,* 54 N.J.E. 659, 35 A. 1072; *The Ohio Society for Crippled Children and Adults v. McElroy,* 175 Ohio St. 49, 191 N.E. 2d 543; *Henshaw v. Flenniken,* 183 Tenn. 232, 191 S.W. 2d 541; *Philadelphia v. Girard,* 45 Pa. 9; 15 Am. Jur. 2d, Charities, Sec. 22. See also Anno: 100 A.L.R. 2d 1208; *Quinn v. Peoples Trust and Savings Co.,* 223 Ind. 317, 60 N.E. 2d 281, 157 A.L.R. 885.

Since North Carolina recognizes that a donor may create a perpetual charitable trust, it would seem strange to deviate from the general rule so as to prevent the donor from restraining sale of the corpus of such trust. Furthermore, it appears that North Carolina has tacitly recognized the right of a donor to restrain alienation of property in charitable trusts when it recognizes the right of the court, in its equitable jurisdiction, to order the sale of trust property under certain conditions, even when the trust forbids the trustee to mortgage or sell.

**[3]**    We conclude that the Court of Appeals erred in holding that the trustee took title in fee simple absolute upon the death of the life tenant without restraint or restriction on the power of alienability. We hold that the trustee took subject to the restrictions on alienation contained in the trust instrument. This, however, does not alter the end result which is controlled by the answer to the second question presented.

The Court of Appeals in considering the second question for decision stated:

> " '. . . (C)ourts of equity have jurisdiction to order, and in proper cases do order, the alienation of property devised for charitable uses. . . . The power is not infrequently exercised where conditions change and circumstances arise which make the alienation of the property, in whole or in part, necessary or beneficial to the administration of the charity. . . . (C)ourts of equity have long exercised the jurisdiction to sell property devised for charitable uses, where, on account of changed conditions, the charity would fail or its usefulness would be materially impaired without a sale.' *Holton v. Elliott,* 193 N.C. 708, 138 S.E. 3."

We agree with this statement.

**[4, 5]**    There is plenary authority in this jurisdiction to the effect that courts in the exercise of their equitable jurisdiction may modify the terms of a charitable trust when it appears that some exigency, contingency, or emergency not anticipated by the trustor has arisen requiring a disregard of a specific provision of the trust in order to preserve the trust estate or protect the *cestuis.* In order to accomplish the ultimate purpose or intent· of the trustor, the court may order real property sold and reinvested in other property when a change in circumstances makes such sale necessary to accomplish the purposes of the trust, even though the trust forbids the trustees to mortgage or sell the property. *Trust Co. v. Johnston,* 269 N.C.

701, 153 S.E. 2d 449; *Cocke v. Duke University,* 260 N.C. 1, 131 S.E. 2d 909; *Keesler v. Bank,* 256 N.C. 12, 122 S.E. 2d 807; *Rex Hospital v. Comrs. of Wake,* 239 N.C. 312, 79 S.E. 2d 892; *Brooks v. Duckworth, supra; Hospital v. Comrs. of Durham,* 231 N.C. 604, 58 S.E. 2d 696; *Hospital v. Cone,* 231 N.C. 292, 56 S.E. 2d 709; *Johnson v. Wagner,* 219 N.C. 235, 13 S.E. 2d 419; *Penick v. Bank, supra; Church v. Ange,* 161 N.C. 314, 77 S.E. 239; Bogert, Trusts and Trustees, 2d Ed. § 392, p. 214.

[6]   In the instant case the undisputed evidence shows that because of changed conditions not anticipated by the trustor, the trust property has become unproductive and that because of such changes a sale of the property for reinvestment would preserve the trust and accomplish its ultimate purpose. Thus, the Court of Appeals correctly held under the facts of this case that the trial court, in the exercise of its equitable jurisdiction, could authorize and direct a sale of the trust property in order to accomplish the purposes of the trust even though the trust instrument forbids such sale.

Modified and affirmed.

BOBBITT, J., concurring in result:

Disposition of this appeal does not require that we decide whether the provision that "the party of the second part (the Trustee) shall have no power to sell or convey the same (trust property) either with or without the consent of the Alexander Home," is valid or void. Hence, I would treat the holding by Judge Hasty, and the affirmance thereof by the Court of Appeals, as unnecessary to decision and leave this question open for consideration and decision in a case where the answer thereto will be determinative.

Since the rule against perpetuities does not apply to charitable trusts, no question is presented as to the *duration* of the trust. The question here relates to the validity of the judgment authorizing a sale of the subject property free from the trust. The evidence fully supports Judge Hasty's findings to the effect that retention of the property by the trustee will defeat rather than effectuate the purposes of the trust. Under these circumstances, a court of equity may order a sale *even where* the trustor expressly provides that the trust property is to be used only for a specified purpose. *Brooks v. Duckworth,* 234 N.C. 549, 67 S.E. 2d 752. Hence, Judge Hasty's judgment should be affirmed.

As to whether the purported absolute restraint on alienation should be considered valid or void, I find no authoritative decision in this

jurisdiction. In my opinion, neither *Hass v. Hass*, 195 N.C. 734, 143 S.E. 541, nor *Brooks v. Duckworth, supra,* is controlling.

In *Hass,* the remainder in fee in 125 acres of land in Catawba County was devised to the State School for the Blind and Deaf at Raleigh, N. C. The opinion of Connor, J., contains the statement that this provision, "if construed as an attempt to restrain the alienation of the real estate, devised in fee to the defendant, the State School for the Blind and Deaf, is of no legal effect and is void in law." However, the action did not relate in any way to a sale of any part of the trust property by the State School for the Blind and Deaf. The judgment simply adjudged that the State School for the Blind and Deaf held title to the land as trustee for the indigent children of the State, born blind, of the Caucasian race, and that the plaintiffs, who were heirs of Mary E. Hass, had no right, interest or title in and to any of the property of which the testatrix died seized and possessed.

In *Brooks,* described real estate was devised to the Board of Trustees of Haywood Street Baptist Mission "to be used as a Baptist Mission, for the purpose of holding religious meetings on week-days and Sundays as the trustees may determine, and is to be established in memory of O. D. Revell and his wife, Caroline E. Revell." The will provided that "said Board of Trustees cannot mortgage or dispose of said property." Manifestly, this purported absolute restraint on alienation was made to effectuate testator's intention that this specific property be used solely for the stated purposes and not otherwise. Under these circumstances, it was held that the trust could be modified by a court of equity in a factual situation where such modification is necessary to prevent the failure of the trust and to effectuate the primary purpose of the trustor.

Decisions in other jurisdictions contain statements to the effect that the rule that a restraint on alienation is against public policy and void applies to private trusts but not to charitable trusts. Ordinarily, the statement is made without analysis of the sufficiency of underlying reasons. If and when the question is necessary to decision, my present view is that the following distinction should be drawn.

Unless the testator specifically restricts the use of the devised property as in *Brooks,* such devised property is simply a general asset of the trust estate and is available to provide income or gains to accomplish elsewhere the objects of the charity. In such case, it seems to me that all reasons for holding restraints on alienation void as against public policy in respect of private trusts apply with equal

force. No sale can be made unless authorized by the court in a duly constituted proceeding. However, the court's inquiry would be to determine simply whether the proposed sale is advantageous to the trust estate. On the other hand, if the testator specifically restricts the use of the devised property to a precise and limited purpose as in *Brooks*, the court, prerequisite to ordering a sale of the property, would have to determine that such sale was necessary to prevent the failure of the trust and to effectuate the general purpose of the testator.

In the present case, the Garsed deed was made in 1930. It contains no provisions whatever that the conveyed land was to be used as a site for the Alexander Home. Rather, the provisions indicate clearly that the trustee was to manage the property so as to produce an income for the Alexander Home. As investment property, it seems to me that a purported absolute restraint on alienation should be adjudged void as against public policy. In such a situation, there is no reason why the trustor should be permitted to impose an obstacle upon the sale and conveyance of the property if such sale and conveyance should be deemed appropriate and to the best interest of the trust estate.

SHARP, J., joins in this opinion.