Hugh M. CUMMINGS, III, and Rebecca C. Cummings, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C–74–66–G.

United States District Court,
M. D. North Carolina,
Greensboro Division.

March 22, 1976.

Andrew S. Martin and Herman Wolff, Jr., Raleigh, N. C., for plaintiffs.

N. Carlton Tilley, Jr., U. S. Atty., Greensboro, N. C., John E. Lutz, Jr., Atty., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

This matter came before the Court on defendant's motion for partial summary

judgment. The parties have stipulated (1) that the central issue before the Court is whether plaintiffs'[1] charitable contribution deduction is to be determined by the fair market value or the cost basis of the gifted property and (2) that a dispositive and binding ruling on the issue will most likely enable the matter to be settled. Jurisdiction is based upon 28 U.S.C. § 1346(a)(1).

In 1961, the Burlington Administrative School Unit (School Unit) began a search for real estate which would serve as a multiple school site. The School Unit soon located a 77.8 acre tract just outside the city limits of Burlington and proceeded to negotiate for its purchase. Various impediments, not material here, arose with the result that the School Unit lacked the funds to purchase the property from its owners, F. E. McPherson and Edna Lucille T. McPherson (McPhersons), and was prohibited by law from incurring a long term obligation in order to make the purchase. The plaintiff learned of the difficulty and offered to purchase the property in order to give it to the School Unit. However, since the plaintiff was also financially incapable of paying the purchase price of $180,-000 in one lump sum, the following procedure was arranged by the plaintiff, the School Unit, and the McPhersons.

The McPhersons, by warranty deed dated November 30, 1961, conveyed the entire 77.8 acre tract to the plaintiff. On the same day, the plaintiff executed a deed of trust in order to pledge the purchased property as security for the unpaid purchase price. Under the provisions of the deed of trust, it was agreed that the $180,000 purchase price would be paid over a period of twelve years at the rate of $15,000 per year. The debt was evidenced by twelve promissory notes each in the amount of $15,000, one of which was due on December 31 of each year from 1961 to 1972. The property was divided into twelve separate but unequal tracts so that one tract could be released from the deed of trust as each note was paid off. Accordingly, twelve separate deeds corresponding to the twelve tracts and conveying the property to the School Unit were executed by the plaintiff, the trustee in the deed of trust, and the McPhersons. All twelve deeds were dated November 30, 1961. Thus, under this arrangement, the plaintiff could pay off one note to the McPhersons each year, release one tract of the property, and then donate the property to the School Unit by means of one of the twelve previously executed deeds.

In 1961 and 1962, plaintiff made the required note payments, delivered a deed to the School Unit, and claimed a $15,000 charitable contribution deduction on his income taxes. Although the plaintiff did not convey any of the remaining tracts in 1963, he conveyed two tracts in 1964 and claimed a deduction in that year for $18,000 on one tract and $20,000 on the other. He conveyed one tract in each of the years of 1965 and 1966, claiming $20,000 as a deduction for each year.

Plaintiff's tax returns for 1964, 1965, and 1966 were audited by the Internal Revenue Service. It was determined that he was entitled to deduct only the actual purchase price of the property which he had donated to the School Unit and not its fair market value because of certain conditions in the warranty deed from the McPhersons to the plaintiff.[2] Plaintiff paid the assessed deficiencies and timely filed claims for refund of taxes which he alleges were erroneously collected in 1965 and 1966.[3]

1. Plaintiff Rebecca C. Cummings, wife of Hugh M. Cummings, III, is a party solely as a result of the filing of joint returns during the years in question. Thus, all future references will be to the singular plaintiff, Hugh M. Cummings, III.

2. There was also a dispute between the plaintiff and the IRS as to the amount which the plaintiff was entitled to deduct for usage of a 1965 Ford station wagon in his business en-

deavors. However, the motion for summary judgment is partial and is based only upon the valuation of the land. Therefore, plaintiff's business deduction for his station wagon will not be discussed.

3. Only the tax returns for 1965 and 1966 are in contention. However, by virtue of the two tracts given to the School Unit in 1964, plaintiff seeks an unused contribution carryover from 1964 to 1965.

26 U.S.C. § 170, which embodies Section 170 of the Internal Revenue Code of 1954, states, in pertinent part, that:

§ 170. *Charitable, etc., contributions and gifts*

(a) *Allowance of deduction.—*

(1) *General rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

.   .   .   .

(c) *Charitable contribution defined.*— For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

(1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals.

Treasury Regulation § 1.170–1(c)(1) specifically addresses the question of property as a charitable deduction:

(c) *Contribution in property—(1) General rules.* If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

It is undisputed that the plaintiff was entitled to a charitable deduction for the land which he donated to the School Unit. At issue is whether he was entitled to deduct the fair market value of the land, which he attempted to do, or the price that he actually paid for the land, which the government insists is correct.

The government contends that, although generally the deduction for the charitable contribution of property is the fair market value of the property, the general rule does not apply in this case because of certain provisions in the warranty deed from the McPhersons to the plaintiff. The pertinent provisions of the deed in question read as follows:

*WITNESSETH:*

That whereas the parties of the second part [plaintiffs] have requested the parties of the first part [the McPhersons] to convey to them the real property hereinafter described *in order to enable said parties of the second part to convey said real property to the Burlington Administrative School Unit of Alamance County for the purpose of using said real property for the location of a school or schools thereon, together with necessary playgrounds, athletic fields, and adjacent improved park ground for school purposes only, with the understanding and agreement that the parties of the second part shall not sell, lease or rent any of said real property to any individual, firm or corporation prior to said conveyance to the said above named School Unit,* .   .   . ;

Now, therefore, for and in consideration of the purposes to be affectuated (sic) by the parties of the second part as hereinafter specifically set forth, and in further consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations to the parties of the first part paid by

the parties of the second part, receipt of which is hereby fully acknowledged, the said parties of the first part have bargained, sold and conveyed and do hereby bargain, sell and convey unto the parties of the second part and their heirs and assigns forever, but upon the trusts and conditions thereinafter mentioned, and none other, all of that certain tract . . . [description omitted];

TO HAVE AND TO HOLD said tract or parcel of land to them the said parties of the second part and their heirs and assigns in fee simple absolute forever, together with all privileges and appurtenances thereunto belonging, and upon the following conditions and trusts, to-wit:

FIRST. This deed is executed by the grantors and accepted by the grantees *upon the express condition that said real property will be conveyed by the grantees for school purposes only to the Burlington Administrative School Unit Alamance County, or its successors,* upon such terms and conditions as the parties of the second part may desire to incorporate in said deed or deeds of conveyance to said School Unit, *and that said real property, and no part of same will be rented or leased to any person, firm, or corporation or sold by the grantees herein except to said Burlington Administrative School Unit for school purposes only and upon condition that if said real property shall, at anytime, cease to be used for school purposes that the title to all said real property hereby conveyed shall revert and be vested in the parties of the second part or their heirs in fee simple.*

. . . .

THIRD. That the said trusts and conditions herein above set forth shall be binding upon the said parties of the second part and their heirs and assigns, and shall be conditions and trusts running with the said land.

. . . . .

The parties of the first part covenant to and with the parties of the second part and their heirs and assigns, that they are seized of the said lands and premises hereby conveyed and that the same are free and clear of all encumbrances except ad valorem taxes for 1961, *that they have the right and power to make this conveyance in fee simple, and that they do hereby warrant and will forever defend the title hereby conveyed against the lawful claims of all persons whomsoever.* (Emphasis added).

The government's basic argument is that the language in the deed to the effect that the property may only be sold to the School Unit and may only be used for school purposes restricts the marketability of the property. Thus, the government contends that, since the property may only be sold to the School Unit for school purposes, the plaintiff could not sell it on the open market and receive fair market value. Therefore, the government maintains, plaintiff is only entitled to deduct what he actually paid for the property instead of the fair market value.

There is no doubt that the draftsman of the deed in question attempted to include some kind of restriction. The granting clause purports to convey the property but only "upon the trusts and conditions" contained in the habendum, and the habendum contains the conditions in controversy. The plaintiff has submitted various affidavits attesting to the actual intention of the parties to the deed. However, the North Carolina Court of Appeals in *Parker v. Pittman,* 18 N.C.App. 500, 197 S.E.2d 570, 574 (1973), has enunciated the following rule of deed construction:

"In construing a deed and determining the intention of the parties, ordinarily the intention must be gathered from the language of the deed itself when its terms are unambiguous." *Smith v. Smith,* 249 N.C. 669, 107 S.E.2d 530. Only when the meaning of the language is in doubt may resort be had to evidence outside of the deed

**1068**

in order to determine the true intent of the grantor. 3 Strong, N.C. Index 2d, Deeds, § 11, p. 257. . . . "The grantor's intent must be understood as that expressed in the language of the deed and not necessarily such as may have existed in his mind if inconsistent with the legal import of the words he has used." *Pittman v. Stanley*, 231 N.C. 327, 56 S.E.2d 657. Any other rule makes for too great instability of titles.

The government has maintained that the previously quoted language in the deed is either (1) a fee simple determinable; (2) a fee simple subject to a condition subsequent; or (3) a restrictive covenant. Any one of these elements, argues the government, causes the land to be so encumbered that its fair market value is negatively affected. The plaintiff, on the other hand, denies that any of those elements are present and contends that, if anything, the contested language constitutes an unlawful restraint upon alienation which could not have been enforced by anyone. Thus, plaintiff argues, the fair market value of the property was unaffected.

The Court is of the opinion that the intention of the parties, as interpreted from the face of the instrument, was to create neither a restrictive covenant nor fee simple determinable. The parties to the deed, the Court believes, attempted to include a fee simple subject to a condition subsequent but, in doing so, created an unlawful and void restraint upon alienation.

The language in the deed is simply not indicative of a fee simple determinable:

The estate known as the fee simple determinable is created when apt and appropriate language is used by a grantor or devisor indicative of an intent on the part of the grantor or devisor that a fee simple estate conveyed or devised will expire *automatically* upon the happening of a certain event or upon the discontinuance of certain existing facts. Typical language creating such estates may specify that a grantee or devisee shall have land "un-

til" some event occurs, or "while," "during," or "for so long as" some state of facts continues to exist. Upon the happening of the specified event, the fee simple determinable automatically terminates and reverts to the grantor or to his heirs. Until the occurrence of the limiting event the grantor (or devisor), or his heirs, have a future interest known as a "possibility or reverter." When the specified event occurs, the possessory estate of the grantee or devisee ends by operation of law automatically and without the necessity of any act of re-entry, without the institution of any lawsuit or the intervention of any court.

J. Webster, Real Property Law in North Carolina, § 35 (1971).

*See Charlotte Park and Recreation Com'n v. Barringer*, 242 N.C. 311, 88 S.E.2d 114, *cert. denied*, 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956). There is no language in the deed in question which would indicate that automatic reversion upon the happening of an event was intended. Therefore, the deed does not contain a fee simple determinable.

The deed in question conveys land "on express condition that" and "on condition that" certain events occur or do not occur and contains what was intended to have been a reverter clause. This language is more indicative of a fee simple subject to a condition subsequent than it is of a fee simple determinable.

A fee simple subject to a condition subsequent, unlike a fee simple determinable, does not terminate automatically upon the happening of the stated event. The grantor, his heirs, or assigns must take affirmative action in order to terminate the estate. In order to create a condition subsequent, the instrument must contain language "showing an intent that the property shall revert to the grantor, his heirs or assigns, or that the grantor, his heirs or assigns, shall have the right to re-enter . . . ." *First Presbyterian Church v. Sinclair Refining Co.*, 200 N.C. 469, 157 S.E. 438, 440 (1931).

The reason for this distinction [between a fee simple determinable and a fee simple subject to a condition subsequent] is that in the case of a fee simple determinable the words that provide for termination of the estate are regarded as a part of the original limitation of the estate; *i. e.*, the estate is to last "so long as," "while," "during," to terminate "when" something exists or occurs. Words of "condition," however, as distinguished from "limitation" words, are considered as words providing for the termination of an estate before its natural termination. Estates in fee simple determinable thus "expire"; estates of fee simple subject to a condition subsequent are "divested" at the option of the person having a "right of entry" or "power of termination." Typical words introducing the estate of fee simple subject to a condition subsequent are: "on condition that," "provided that," "to be null and void if," or "to be forfeited if" a certain event occurs or fails to occur. . . .

J. Webster, Real Property Law in North Carolina, § 37 (1971).

■ Conditions which restrict fee simple estates are not favored by the law and are strictly construed. *First Presbyterian Church v. Sinclair Refining Co.,* supra, 157 S.E. at 440. In determining whether the phraseology in a deed constitutes a condition (*i. e.*, a fee simple determinable or fee simple subject to a condition subsequent) or a restrictive covenant, the following standard is helpful:

The intention of the parties as derived from the imposing instrument is crucial. If the intention is expressed clearly that the continuation of the estate granted is to be dependent upon the happening or nonhappening of some specified event, the restriction will be construed a "condition"; if the restriction evinces the intention of the

parties that it merely exacts a promise from the grantee that the land will not be used other than in a designated manner for a designated purpose, or that some other act will be performed, the restriction will be construed to be simply a "covenant."

J. Webster, Real Property Law in North Carolina, § 346 (1971).

Although the deed in question at one point employs the words "understanding and agreement" in stating that the plaintiff "shall not sell, lease, or rent any of said real property . . ." prior to conveyance to the School Unit, the clear intention of the deed is that continuation of the estate, in the possession of the School Unit, is dependent upon the stated restriction. Therefore, no restrictive covenant was created.

■ The deed in question contains the "express condition" (1) that the property "will be conveyed by the grantees for school purposes only to the Burlington Administrative School Unit . . ." and (2) that no part of the property "will be rented or leased to any person, firm, or corporation or sold by the grantees herein except to said Burlington Administrative School Unit for school purposes only."

■ The primary import of these contested provisions is that the plaintiff is precluded from disposing of the property to any party other than the School Unit. Under North Carolina law, it is an unlawful restraint on the alienation of land to specify in a deed that the property may only be reconveyed to certain parties. *Langston v. Wooten,* 232 N.C. 124, 59 S.E.2d 605 (1950); *Brooks v. Griffin,* 177 N.C. 7, 97 S.E. 730 (1919).

The Supreme Court of North Carolina in *Williams v. McPherson,* 216 N.C. 565, 5 S.E.2d 830, 831 (1939), pointed out that such restrictions are "contrary to public policy and void . . . ."[4] *See Buckner v. Hawkins,* 230 N.C. 99, 52 S.E.2d 16

---

4. The Court is aware of the holding in *Wachovia Bank & Trust Co. v. John Thomasson Construction Co.,* 275 N.C. 399, 168 S.E.2d 358 (1969), that this rule does not apply when the condition against alienation is contained in a gift for a charitable trust. However, the Court is of the opinion that neither a "gift" nor a "trust" was created by the deed in question.

(1949); *Douglass v. Stevens*, 214 N.C. 688, 200 S.E. 366 (1939); *Schwren v. Falls*, 170 N.C. 251, 87 S.E. 49 (1915).

Since the restrictive provisions in the deed in question are void and thus unenforceable, the fair market value of the property could not be affected by them. Therefore, the Court will deny the defendant's motion for partial summary judgment. The Court specifically finds that the plaintiff's charitable contribution deduction will be calculated according to the fair market value of the gifted property rather than the actual cost of the property to the plaintiff.

Therefore, it is ORDERED that the defendant's motion for partial summary judgment be, and the same hereby is, DENIED.